RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0344p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JAMES J. ROGERS,

*Plaintiff*,

GARRY MURPHY and BRIAN HENSLEY,
    *Plaintiffs-Appellants/Cross-Appellees*,

*v.*

SHERIFF NELSON O'DONNELL, et al.,
    *Defendants*,

JENNIFER HALL SMITH and DAVID W. SMITH,
    *Defendants-Appellees/Cross-Appellants*.

Nos. 12-6335/6336

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:10-cv-00373—Jennifer B. Coffman, Chief District Judge.

Argued: December 4, 2013

Decided and Filed:  December 16, 2013

Before:  SILER, McKEAGUE and WHITE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Andrew J. Horne, HORNE LAW OFFICE, Louisville, Kentucky, for Appellants/Cross-Appellees.  Lucy A. Pett, STOLL KEENON OGDEN PLLC, Lexington, Kentucky, for Appellees/Cross-Appellants **ON BRIEF:** Andrew J. Horne, HORNE LAW OFFICE, Louisville, Kentucky, for Appellants/Cross-Appellees.  Lucy A. Pett, R. Burl McCoy, Carl N. Frazier, STOLL KEENON OGDEN PLLC, Lexington, Kentucky, Matthew W. Breetz, Bethany A. Breetz, Michasel M. Denbow, STITES & HARBISON, PLLC, Louisville, Kentucky, for Appellees/Cross-Appellants.

1

———————————

**OPINION**

———————————

McKEAGUE, Circuit Judge.  This appeal is the remnant of litigation stemming originally from offensive, but largely consensual sexual conduct among adults, three men and one woman.  Investigation by the local Sheriff Department led to grand jury proceedings, an indictment, and a criminal trial in state court.  The three male participants in the escapade, all local police officers, eventually faced charges of assault and witness tampering.  After they were found not guilty of the criminal charges, they commenced this action, asserting various claims against numerous persons who had been involved in the investigation and prosecution.  In what appears to be the last remaining sliver of the litigation, the district court dismissed plaintiffs' claims against two prosecuting attorneys, finding them protected by absolute and qualified immunity.  On appeal, plaintiffs-appellants contend the district court failed to view the record in the light most favorable to them and abused its discretion by disallowing discovery before ruling on the immunity issues.  For the reasons that follow, we affirm.

**I**

Plaintiffs-appellants are Garry Murphy and Brian Hensley.  At all times pertinent, they were Richmond (Kentucky) Police Officers.  It is undisputed that on the night of October 26, 2009, they, along with a third officer, while off-duty, visited the Richmond apartment of April McQueen by invitation.  The third officer, James J. Rogers, was a plaintiff in this action but he voluntarily dismissed his remaining claims and has not joined in this appeal.  For several hours, the four adults engaged in sexual conduct that Murphy and Hensley characterize as having "included bondage and discipline, dominance and submission and sadism and masochism."

After the encounter ended and the officers left, McQueen visited her neighbor and friend, Bobbie Judd.  McQueen, who was concerned about her appearance because she was going to meet another man the following day, explained what had happened and

asked Judd for an ice pack or medicine for her bloodied, swollen mouth. Judd insisted, over McQueen's reluctance, that the incident be reported to the police. Later that morning, Judd, with assistance and encouragement of another neighbor, set up a meeting at her apartment between McQueen and others. This meeting led to an investigation by the Madison County Sheriff Department. Throughout the investigation, McQueen refused to cooperate with prosecution of the men. Yet, her account of the extent to which she consented to all the acts she engaged in varied from time to time.

On October 27, 2009, McQueen gave a recorded statement at the Sheriff Department recounting the events of the prior night and maintaining that she did not want to press charges. She explained that the sexual activity was "rough," but consensual. Only when the men wanted to urinate in her mouth did she balk. After one of them slapped her repeatedly, she assented, then vomited. This part of the episode was "over the top," made her angry, and sickened her, but McQueen called it a "misunderstanding." She wanted to "forget the whole damn thing." R. 11-2, Video recording, 10/27/09 interview.

The next day, after communicating with Rogers about the incident, McQueen decided to return to the Sheriff Department to clarify her statement. She explained that the room was dark when Murphy hit her and it may have been accidental; that she was "freaked out" by the idea of swallowing urine, but nobody "forced" her; that she told them to stop, but didn't necessarily mean it; that she consented not because she was afraid the men would hurt her, but because she was afraid of disappointing them. She insisted that Rogers did not try to make her change her story; that Judd and others had pressured her into reporting the incident in the first place; and that she still wanted to drop the whole thing and forget it ever happened. R. 11-3, Video recording, 10/28/09 interview.[1]

---

[1]Following the interviews of McQueen and the three officers, the Sheriff allegedly informed the officers that criminal sexual conduct charges would not be pursued against them before a grand jury. Instead, the indictment later returned by the grand jury charged them with witness tampering and assault offenses, stemming from (a) interactions between McQueen and the officers after their sexual encounter, and (b) Murphy's slapping of McQueen during the encounter.

In early November, McQueen was advised by defendant Assistant Commonwealth Attorney Jennifer Hall Smith that she wanted to speak with her and intended to present charges to the Madison County Grand Jury with or without McQueen's assistance. The two met, in the company of McQueen's attorney, Mary Sharp, on November 12, 2009.[2] Smith confronted McQueen with the differences between her two prior statements at the Sheriff Department, on October 27 and 28, and inquired whether Rogers or the other officers had intimidated her. The recording of the interview shows that Smith did not question either the nature of the sexual conduct or the issue of consent. Her questions went to the nature and frequency of McQueen's interactions with Rogers, the apparent inconsistencies in statements made to the Sheriff Department investigators, and the nature of the injury inflicted by Murphy during the encounter.[3] McQueen insisted that the officers had not threatened or intimidated her. The greater influence had come, she said, from her friend Bobbie Judd and others, including others in the Sheriff Department, who were pressuring her to bring charges. R. 11-4, Video recording, 11/12/09 interview.

On December 10, 2009, McQueen testified before the grand jury. Her testimony was roughly consistent with the second statement she made at the Sheriff Department, indicating that essentially the whole affair was consensual. On December 21, she testified a second time before the grand jury. This time, purportedly prompted by encouragement from her mother to tell the truth, McQueen clarified that she allowed the men to urinate in her mouth only because Murphy slapped her and scared her with his aggressiveness. "That part was not consensual," she said. Further, she testified that she was still scared of Murphy and Rogers.

---

[2]Mary Sharp was apparently retained by the officers to represent McQueen in the investigation. In response to questioning as to who was paying for Attorney Sharp's services, McQueen testified before the grand jury that "they say I don't owe anything. That they're doing it, she's doing it for free and they're hoping that I'll file a lawsuit against the Sheriff's Department after this is over with and she can collect on that." R. 11-9, Grand Jury tr. at 8–9, Page ID # 200–01.

[3]Smith also asked McQueen to address conflicting statements given by the officers relating to their interactions with McQueen in the aftermath of the encounter, a matter directly related to the charges later brought to the grand jury.

Later that day, defendant Commonwealth Attorney David W. Smith escorted McQueen back to the grand jury room for a meeting with Jennifer Smith and others.[4] At that time, McQueen having now testified under oath that at least one act was not consensual and that she was intimidated by at least two of the men,  Jennifer Smith allegedly urged McQueen to tell the truth and not to cover for the police officers.  Smith also reportedly questioned whether McQueen's attorney, Mary Sharp, who customarily defended police officers, was really serving McQueen's best interests.

McQueen went on to testify before the grand jury a third time, on January 28, 2010.  McQueen confirmed that her December 21 testimony was truthful and that Murphy and Rogers scared her.  Yet, in addition to pressure being exerted by Rogers, McQueen testified about pressure being applied by Sheriff Department personnel as well.

The grand jury returned an indictment charging Murphy with fourth degree assault and all three officers with witness intimidation and tampering offenses.  Trial was conducted in March 2010.  McQueen testified at trial that all the acts between her and the officers on the night of October 26, 2009 were consensual.  Insofar as this account differed from her grand jury testimony on December 21 and January 28, McQueen explained that she had felt pressured by Jennifer Smith and others.  McQueen testified that Jennifer Smith "intimidated" her through her very presence, by planting seeds of doubt in her mind and undermining her trust in her attorney.  All three defendants were found not guilty on all charges.

In October 2010, Rogers, Murphy and Hensley commenced this action by filing a 13-count, 33-page complaint in the District Court for the Eastern District of Kentucky. Among the numerous named defendants were the Madison County Sheriff and two subordinate officers, two of McQueen's neighbors, as well as her landlord, and the prosecutors, Commonwealth Attorneys David Smith and Jennifer Smith.  The three plaintiffs asserted claims under federal and state law for malicious prosecution, abuse

---

[4]David Smith and Jennifer Smith are married; hence the shared surname.

of criminal process, violation of privacy rights, defamation and conspiracy to violate civil rights. In lieu of an answer, the Smith defendants moved to dismiss or, in the alternative, for summary judgment. In the ruling that is the subject of this appeal, the district court awarded summary judgment to David Smith and Jennifer Smith on all claims against them based on absolute prosecutorial immunity and qualified immunity.

The district court recognized that all the allegations against the Smith defendants arose out of two meetings, one between Jennifer Smith and April McQueen on November 12, 2009, and one between both Smith defendants and McQueen on December 21, 2009. In these meetings, the Smith defendants allegedly intimidated and harassed McQueen to induce her to testify against plaintiffs in the grand jury proceedings.

In regard to the former meeting, on November 12, the district court held David Smith was entitled to summary judgment on all claims because plaintiffs had not alleged any involvement by him. The district court held Jennifer Smith was not entitled to absolute immunity for her role in the November 12 meeting, concluding that she had not met her burden of proof and that her actions could be construed as having been taken in her capacity as an investigator rather than as an advocate. The court held Jennifer Smith was protected by qualified immunity, however, because plaintiffs had not alleged facts making out a violation of any clearly established constitutional right. Specifically, the court held plaintiffs' claims were flawed for lack of allegation that they were deprived of any liberty or property as a result of Jennifer Smith's wrongful actions. In regard to the meeting on December 21, the court held that both Smith defendants were acting as advocates when they met with McQueen following her grand jury testimony and were therefore entitled to absolute immunity. On appeal, plaintiffs challenge these rulings on several grounds. The Smith defendants have cross-appealed, challenging (1) the district court's conclusion that Jennifer Smith was not entitled to absolute immunity with respect to the November 12 meeting, and (2) the district court's denial of their motion for attorneys' fees.

## II

### A. Standard of Review

The district court's summary judgment ruling is reviewed de novo. *Howell v. Sanders*, 668 F.3d 344, 349 (6th Cir. 2012). Summary judgment should be rendered "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The reviewing court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008). Not just any alleged factual dispute between the parties will defeat an otherwise properly supported motion for summary judgment; the dispute must present a *genuine* dispute of *material* fact. *Id.* A dispute is "genuine" only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party. *Niemi v. NHK Spring Co., Ltd.*, 543 F.3d 294, 298 (6th Cir. 2008). A factual dispute concerns a "material" fact only if its resolution might affect the outcome of the suit under the governing substantive law. *Id*. at 298–99.

### B. Federal Claims — Absolute Immunity

In addressing the Smith defendants' assertion of absolute immunity, the district court correctly referred to *Koubriti v. Convertino*, 593 F.3d 459 (6th Cir. 2010). The *Koubriti* opinion contains an excellent summary description of the contours of absolute immunity, here reproduced at length:

> [O]fficials enjoy absolute immunity from civil liability related to their performance of "prosecutorial" functions. *See Burns v. Reed*, 500 U.S. 478, 486 (1991). The burden of proof is on the official seeking absolute immunity, however, to prove that the behavior in question falls in the category of behavior that merits this higher level of protection. *Id.*
>
> In *Burns v. Reed,* the Supreme Court mandated that courts use a "functional approach" when determining whether a government official's actions fit within the category of actions traditionally entitled to absolute immunity. *Id.* Using this approach, courts must look to "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U.S. 219, 229 (1988). Functions that serve as an

"integral part of the judicial process" or that are "intimately associated with the judicial process" are absolutely immune from civil suits. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Meanwhile, functions which are more "investigative" or "administrative" in nature, because they are more removed from the judicial process, are subject only to qualified immunity. *Burns,* 500 U.S. at 486. Although "[t]he line between a prosecutor's advocacy and investigating roles might sometimes be difficult to draw," *Zahrey v. Coffey*, 221 F.3d 342, 347 (2d Cir. 2000), we are not without some guidance to help determine where that line should be drawn. For example, conduct by a prosecutor that is nonetheless investigative or administrative in function includes: "giving legal advice to police," *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir. 2003); making "out-of-court statements" at a press conference, *Buckley v. Fitzsimmons*, 509 U.S. 259, 277–78 (1993); making statements "in an affidavit supporting an application for an arrest warrant," *Kalina v. Fletcher*, 522 U.S. 118, 119 (1997); and "authorizing warrantless wiretaps in the interest of national security," *Mitchell v. Forsythe*, 472 U.S. 511, 520 (1985). On the other hand, prosecutors have absolute immunity from "suits for malicious prosecution and for defamation, and . . . this immunity extend[s] to the knowing use of false testimony before the grand jury and at trial." *Burns*, 500 U.S. at 484. Likewise, they have absolute immunity for the following actions: appearances at probable cause and grand jury hearings, *Spurlock*, 330 F.3d at 797; evaluation of evidence and presentation of that evidence at pre-trial and trial proceedings, *id.*; and preparation of witnesses for trial, *id.*

*Koubriti*, 593 F.3d at 467.

### 1. *November 12 Meeting*

Insofar as plaintiffs' claims against the Smith defendants are based on the November 12 meeting between Jennifer Smith, April McQueen, and McQueen's attorney, Mary Sharp, the district court concluded absolute immunity was not applicable because Jennifer Smith did not carry her burden of showing that she was functioning as an advocate. The recording of the interview supports the district court's finding that "[t]hroughout the interview, Smith sought explanations from McQueen for her apparent inconsistencies and asked about her ongoing relationship with the plaintiff, James Rogers." R. 50, Summary Judgment Order at 4–5, Page ID # 970–71. The district court viewed this as indicating an "investigatory" purpose, even though the court acknowledged plaintiffs' allegation in their complaint that Smith had already determined

to present the case to the grand jury. In our view, the record conclusively demonstrates that Smith was not acting simply in an investigative or administrative capacity when making these inquiries. This conclusion is based on the following considerations.

First, plaintiffs acknowledged in their complaint and took the position in response to defendants' motion to dismiss the complaint that the determination to present the case to the grand jury had been made *before* the November 12 interview. On appeal, plaintiffs have not retreated from this position or claimed differently. Second, the recording of the interview shows that Jennifer Smith was not interested in revisiting the question whether the sexual conduct engaged in on October 26 was consensual; she accepted McQueen's consistent assertion that it was. Instead, she was concerned about the then known facts that tended to substantiate the very criminal offenses that were eventually charged and tried, i.e., assault and witness tampering. Among these facts were: (1) photographs of McQueen's face, showing her swollen and bloodied mouth just hours after the "encounter" had taken place; (2) McQueen's consistent statements that, during the sexual conduct, she had been slapped repeatedly in the face; (3) McQueen's consistent statements that three men had urinated in her mouth despite her vocal objections; (4) inconsistencies in McQueen's characterizations of the extent to which she consented when the men urinated in her mouth; and (5) the suspicious circumstance that, between making the two inconsistent statements, McQueen had talked with one of the three men, Rogers, who had in fact driven her to the Sheriff Department to give the second statement.

In light of these facts, Smith's interview of McQueen, in the presence of her attorney, in anticipation of grand jury proceedings, was clearly an integral part of, or intimately associated with, the judicial process. The interview was not akin to such actions as might legitimately be considered "investigative" or "administrative" in nature, such as giving advice to police officers, or making a press conference statement, or making a statement in application for a warrant. Smith's actions in the November 12 interview were in the nature of evaluating evidence and preparing a victim witness for upcoming grand jury proceedings, i.e., actions of an advocate in furtherance of

prosecution for assault and witness tampering. *See Wendrow v. Michigan Dep't of Human Servs.*, ___ F. App'x ___, 2013 WL 4530055 (6th Cir. Aug. 28, 2013) (holding that prosecutors' interviews of victim witness in preparation for upcoming hearings were conducted as part their prosecutorial role and entitled to absolute immunity); *Spurlock v. Thompson*, 330 F.3d 791, 798 (6th Cir. 2003) (holding that "[p]rosecutorial decisions regarding witness testimony, including what witnesses to use at trial, and what questions to ask them, are activities intimately associated with the judicial phase of a criminal trial and, therefore, are protected by absolute prosecutorial immunity."); *Higgason v. Stephens*, 288 F.3d 868, 878 (6th Cir. 2002) (holding that prosecutor was "absolutely immune for his professional evaluation of the evidence assembled, and for his presentation of that evidence to the grand jury"); *Ireland v. Tunis*, 113 F.3d 1435, 1445 (6th Cir. 1997) (holding that "[i]nvestigative acts undertaken in direct preparation of judicial proceedings, including the professional evaluation of evidence, warrant absolute immunity").

Accordingly, the district court erred when it determined that Jennifer Smith was not entitled to absolute immunity in relation to her meeting with April McQueen on November 12. We find no fault in the court's dismissal of the claims against David Smith based on the November 12 meeting (for lack of allegation of his involvement). Further, even if, as plaintiffs argue, discovery might have revealed that he authorized or acquiesced in Jennifer Smith's participation in the interview, David Smith would enjoy the same absolute immunity as Jennifer Smith for such conduct in the prosecutorial role.[5]

We also find no error in the district court's rejection of plaintiffs' argument that the prosecutors are not entitled to absolute immunity because such immunity was not recognized in common law. As the district court concluded, and as plaintiffs concede, this argument is essentially foreclosed by the Supreme Court's ruling in *Imbler v. Pachtman*, 424 U.S. 409, 427-29 (1976).

---

[5]This disposition obviates the need to review the correctness of the district court's ruling that Jennifer Smith was entitled to qualified immunity in relation to her actions in the November 12 meeting.

## 2. *December 21 Meeting*

Insofar as plaintiffs' claims against the Smith defendants are based on their December 21 meeting with April McQueen in the grand jury room, the district court concluded defendants are entitled to absolute immunity. The court held that both defendants "were acting as advocates during their meeting with McQueen on December 21" because they "were attempt[ing] to control McQueen's testimony and insure that she continued to testify against the plaintiffs." R. 50, Summary Judgement Order at 9, Page ID # 975. This is clearly a proper application of the absolute immunity standards set forth in *Koubriti*, discussed above.

Plaintiffs do not challenge this ruling except to argue that it was premature. They contend the district court abused its discretion by ruling without giving them a full opportunity to conduct discovery. Yet, because the absolute immunity defense presents a threshold question that may be raised prior to discovery, it was incumbent on plaintiffs to demonstrate why such discovery was necessary. *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004). Plaintiffs' counsel filed an affidavit under Fed. R. Civ. P. 56(d), expressing his desire to depose persons present at the December 21 meeting to determine whether the Smith defendants were acting as advocates. Yet, such a vague assertion is insufficient to meet the requirement to identify with "some precision" the materials hoped for and their relevance to the absolute immunity issue. *Id.*

Considering the known and undisputed circumstances of the December 21 meeting, it is hard to conceive of any revelation that could plausibly have impacted defendants' entitlement to absolute immunity. The meeting occurred immediately after McQueen had testified for the second time before the grand jury and had materially altered her story in a manner favoring prosecution. Further, plaintiffs had the benefit of McQueen's account of Jennifer Smith's urging her to testify truthfully and not to cover for the officers. Accordingly, we find no error in the district court's refusal to permit further discovery before ruling on the absolute immunity defense.

It follows that the Smith defendants were entitled to summary judgment, based on absolute immunity, on all of plaintiffs' federal civil rights claims against them.

## C.  State Law Claims

The district court granted summary judgment to the Smith defendants on plaintiffs' state law claims as well, holding that Kentucky law looks to federal law in analyzing prosecutorial immunity. In this ruling, too, we find no error. *See Howell v. Sanders*, 668 F.3d 344, 355 (6th Cir. 2012) ("Similar to federal law, Kentucky offers both absolute immunity and qualified immunity to prosecutors.  Kentucky also uses function as the dividing line, providing absolute immunity for a prosecutor's actions taken as an advocate and only qualified immunity for those taken as an investigator.").

## D.  Denial of Attorneys' Fees

In their cross-appeal, defendants object to the district court's denial of their motion for attorneys' fees under 42 U.S.C. § 1988.  The district court held that plaintiffs' claims against the Smith defendants were barred by immunity, but they were "not frivolous, unreasonable, or without foundation," citing *Fox v. Vice*, 131 S.Ct. 2205, 2213 (2011).  R. 68, Order Denying Attorneys' Fees at 2, Page ID # 1071.  The district court has "wide discretion" in making this determination.  *Fox*, 131 S. Ct. at 2217.  Having duly considered defendants' arguments, we find no abuse of discretion.

### III

For the foregoing reasons, although we find the district court erred in its refusal to grant the Smith defendants absolute immunity in relation to the November 12 meeting, we nonetheless **AFFIRM** the award of summary judgment in favor of the Smith defendants on all of plaintiffs' claims against them. We also **AFFIRM** the court's denial of defendants' motion for attorneys' fees.