NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0013n.06

No. 18-1051

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| KEVIN SCOTT, | ) | **FILED** |
| | ) | Jan 11, 2019 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| TROTT LAW, P.C., | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE:     **BATCHELDER, DONALD, and THAPAR, Circuit Judges.**

**ALICE M. BATCHELDER**, **Circuit Judge**.  This case is about a debtor, Scott, who claimed a debt collector, Trott, deceptively and fraudulently tried to foreclose on his mortgage. Scott's Complaint asserted six counts of civil violations under federal and state law.  After three months of discovery concluded, the district court granted summary judgment to Trott and dismissed all six counts.  Scott appealed one count as a matter of statutory interpretation and appealed the district court's decision to end discovery and consider summary judgment.  We hold that the district court did not abuse its discretion ending discovery and considering summary judgment but that the court erred interpreting the statute.  We **REVERSE** and **REMAND**.

### I.

Although the facts of this case involve a debtor with previous litigation relating to his mortgage and the lender, this case is limited to the interactions between a debt collector and the debtor.  In 2004, Kevin Scott (Scott) executed a mortgage with Bank of America, N.A. (BANA)

on his home in Farmington Hills, Michigan.  Between 2012 and 2016, Scott and BANA litigated over various issues relating to the mortgage; those issues were ultimately resolved by an order of this court in June 2016, dismissing Scott's appeal of the district court's order granting summary judgment to the defendants and dismissing the Complaint.  *Kevin Scott v. Bank of America, N.A. et al*, No. 15-2188, (6th Cir. Jun. 7, 2016).  In September of 2016, BANA retained Trott Law, P.C. (Trott) as a debt collector to manage foreclosure proceedings on Scott's mortgage due to nonpayment.

On September 20, 2016, in compliance with the Fair Debt Collection Practices Act[1] (FDCPA), Trott sent a Fair Debt Letter to Scott informing him of Trott's role as a debt collector acting on behalf of its client, BANA, to foreclose on Scott's mortgage for the total outstanding indebtedness of the mortgage.  The Fair Debt Letter stated:

> Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days after receiving this notice that you dispute the validity of this debt, this office will obtain verification of the debt or a copy of the judgment, if applicable, and mail a copy of such verification or judgment to you. If you request, in writing, within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

On October 5, Trott took three actions.  First, Trott arranged a sheriff's sale for a Foreclosure of Mortgage by Advertisement with an auction date of November 8, 2016.  Pursuant to Michigan law,[2] Trott prepared a Notice of Mortgage Foreclosure Sale (Notice) to be posted on the premises of Scott's home and published for four consecutive weeks in a newspaper in the county of Scott's residence, stating the date of sale and amount of outstanding mortgage debt. Second, Trott contacted the local newspaper to schedule the home posting and the four publications of the Notice

---

[1] 15 U.S.C. § 1692.

[2] Mich. Comp. Laws § 600.3208.

for October 7, 14, 21, and 28. The newspaper had the Notice posted on the premises on October 14. Third, Trott mailed a copy of the Notice to Scott. On October 8, Scott sent a certified letter (Dispute Letter) to Trott disputing the validity of the debt, claiming he was current on his mortgage, and that all payments had been made to BANA's attorneys pursuant to a court order entered in the prior litigation over the delinquency of this mortgage. Trott received the Dispute Letter on October 11.

Trott claimed that after receiving the Dispute Letter it ceased collection of the debt and contacted its client BANA to confirm the debt's validity. The Notice, however, was posted on the premises on October 14 and published in the newspaper on October 14, 21, and 28. Trott did not send Scott a verification of the debt. Scott claimed he tried to contact Trott but that it would not respond to his communications.

On October 20, 2016, Scott filed the complaint against Trott including a motion for a temporary injunction to enjoin the November 8 sheriff's foreclosure sale. On November 4, Trott filed a response opposing the injunction, and on November 7, hours prior to the hearing on the motion for the preliminary injunction, Scott filed for Chapter 13 bankruptcy. The scheduled sheriff's foreclosure sale did not take place, and the motion for an injunction was stayed pending verification of the debt.

Scott's complaint against Trott alleged violations of the FDCPA (Count 1), violation of the Real Estate Settlement Procedures Act (Count 2), unreasonable collection efforts under Michigan Law § 339.918(e)(2) (Count 3), Fraud and Misrepresentation (Count 4), Intentional Infliction of Emotional Distress (Count 5), and violation of civil rights under 42 U.S.C. § 1981 (Count 6).

On December 13, the district court entered a scheduling order that, among other things, gave the parties three months for discovery, and set a jury trial for August 8, 2017. In January,

Trott moved for summary judgment or for dismissal of Scott's complaint for failure to allege sufficient facts to state a claim. In April, the district court held a hearing on the motion at which Scott argued that he did not fairly have the opportunity to make his case.

The district court found that there were no material facts in dispute between the parties and granted summary judgment on the FDCPA claim, holding that as a matter of law, the FDCPA did not require that Trott verify the debt and that Trott had "cease[d] collection of the debt" pursuant to the statute because Trott itself performed no more activity. The court dismissed Counts 2-6, holding that Scott failed to state sufficient facts or make allegations with sufficient particularity to state any claim. The district court held all outstanding discovery motions moot and dismissed the case.

Scott raises two issues on appeal. First, Scott argues that the district court erred in interpreting the language of the FDCPA and finding that Trott ceased collection of the debt. Second, Scott contends that the district court's ruling on a summary judgment motion before all discovery motions and requests had been completed denied him a meaningful opportunity to gather facts and evidence to make his case. Scott does not appeal the district court's order dismissing Counts 2–6 of his complaint and he therefore waives argument on those claims.

## II.

We review de novo a district court's grant of summary judgment. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013). Summary judgment is proper when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court must consider the evidence in the light most favorable to the non-moving party. *Rogers*, 737 F.3d at 1030. The record in this case demonstrates that there was no genuine dispute of material fact between the parties regarding Count 1, only a

question of law. The district court ruled that, as a matter of law, the statutory language of the FDCPA's command to "cease collection of the debt" did not require Trott to intervene and stop the actions of Trott's agents and/or third parties that Trott put into motion prior to receiving Scott's Dispute Letter. We find the district court erred in that determination.

The issue is a matter of first impression for this circuit. In 2013, we took the consequential step of ruling that mortgage foreclosures were "debt collection" under the FDCPA. *Glazer v. Chase Home Finance LLC.*, 704 F.3d 453 (6th Cir. 2013). Prior to *Glazer*, the Sixth Circuit was among the majority of circuits that do not classify a mortgage foreclosure as debt collection, but rather an "enforcement of a security interest." *Id.* at 460. In *Glazer*, we joined the Third and Fourth circuits in the minority that do. *See Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227 (3rd Cir. 2005); *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373 (4th Cir. 2006).

This shift five years ago has had heightened implications for the Michigan foreclosure industry. Michigan is among the few states that permit non-judicial mortgage foreclosures. *See* Mich. Comp. Laws § 600.3201 (Foreclosure of Mortgage by Advertisement). Because this non-judicial process is faster and less cumbersome for lenders, the majority of Michigan foreclosures are executed in that manner. However, Michigan's process requires some actions that implicate the FDCPA in perhaps unexpected ways. In the aftermath of *Glazer*, litigation regarding the FDCPA's requirements as they pertain to Michigan's foreclosure industry has increased. We take this opportunity to provide some clarity.

Under Michigan law, a party executing a Foreclosure of Mortgage by Advertisement must publish a detailed Notice for four consecutive weeks in a county newspaper and post the Notice in a conspicuous place on the premises. *Id.* § 600.3208. This publication of notice qualifies under the FDCPA as an "initial communication" with the debtor, 15 U.S.C. § 1692a(2). The FDCPA

requires that within five days of that initial communication, the debt collector must send to the debtor a Fair Debt Letter containing specific information about the debt, its intention to collect the debt, and the debtor's rights, unless the published notice contains that information. 15 U.S.C. § 1692g(a). That information includes the amount of the debt, the identity of the creditor, the right of the debtor, within thirty days of receipt of that notice, to dispute the validity or the amount of the debt, and the right of the debtor to notify the debt collector within that thirty-day period of its demand to obtain from the debt collector verification of the debt. *Id.* Finally, the FDCPA provides:

> If the consumer notifies the debt collector in writing within the thirty-day period . . . that the debt, or any portion thereof, is disputed . . . the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment . . . and a copy of such verification or judgment . . . is mailed to the consumer by the debt collector. 15 U.S.C. § 1692g(b).

Scott originally claimed three violations[3] under the FDCPA but here he appeals only one: whether Trott ceased collection of the debt after receiving Scott's Dispute Letter on October 11 as the FDCPA requires. Scott claims that the events occurring after October 11 constitute collection activity by Trott: (1) the newspaper advertisements on October 14, 21, and 28; (2) the posting of the Notice at Scott's home on October 14; (3) Trott's failure to cancel the sheriff's sale scheduled for November 8; (4) Trott's refusal to engage in communications with Scott after October 11; (5) Trott's November 4 response in opposition to Scott's October 20 motion for temporary injunction.

We consider the newspaper advertisements, the home posting, and sheriff's sale together. Scott contends that since these activities were necessary to satisfy the requirements of a Foreclosure of Mortgage by Advertisement under Michigan law, they must be construed to be

---

[3] Scott's Complaint asserted that the FDCPA required debt collectors to verify the debt upon receipt of the Dispute Letter and that the FDCPA required debt collectors to independently investigate the amount of debt. The district court appropriately dismissed these claims as incorrect as a matter of law. Scott did not appeal these determinations.

continued collection activity under the FDCPA. Scott has strong grounds for this assertion. "If a purpose of an activity taken in relation to a debt is to 'obtain payment' of the debt, the activity is properly considered debt collection." *Glazer*, 704 F.3d at 461. It is uncontested that these three activities are statutorily required under Michigan law. *See* Mich. Comp. Laws § 600.3201, § 600.3208, § 600.3216.

Trott does not address whether the activity was debt collection taken after the Dispute Letter was received, but rather claims that Trott was not the one performing the activity arguing that, "[t]he publications and posting, that Scott attempts to bootstrap to Trott, were ordered by Trott prior to the receipt of the [Dispute Letter] and were actions by third-parties other than Trott.". The district court found this compelling, stating, "Scott has not shown, however, that these were collection activities on the part of Trott." The court also determined that the FDCPA did not require Trott "to take any positive action to stop" third parties.

The issue before us is whether FDCPA's requirement that a debt collector must "cease collection of the debt" after receiving a Dispute Letter required Trott to stop the subsequent newspaper publications from appearing, stop the home posting from occurring, and stop the sheriff's sale from taking place. We find that it does. To read the FDCPA as the district court did would render the Dispute Letter a nullity.

Trott admits that it ordered the newspaper advertisements and the home posting, mailed the Notice, and scheduled the sale with the sheriff all contemporaneously on October 5. These activities set into motion all the requirements to satisfy Michigan foreclosure law and the FDCPA. Trott then claims that after receiving the Dispute Letter on October 11, it did nothing more towards debt collection. However, Trott fails to mention that there was nothing else for it to do—parties directed by Trott would continue to do everything else necessary. Ostensibly, Trott is suggesting

that even though Scott sent a Dispute Letter, the foreclosure sale could have still occurred because Trott itself had "ceased." This reading of the statute produces a result contrary to the plain intent of the FDCPA and this circuit's case law.

Although the FDCPA contains a definitions section, it omits a statutory definition of "cease" or "collection of the debt." Thus, we begin with a clean slate. The verb "cease" is defined in Black's Law Dictionary[4] as, "to stop," "to come to an end," "to suspend or forfeit." Within § 1692g(b), the noun subject of the verb "cease" is the "debt collector." The direct object of the verb "cease" is "collection of the debt." It follows then that the statute imposes on the "debt collector" an obligation *to stop* the "collection of the debt." This is more obviously true when the debt collector has been the one to initiate the "collection of the debt." This obligation exists only until the debt collector "obtains verification" of the debt and sends it to the debtor, after which the debt collector is free to resume collection of the debt.

The contours of "collection of the debt" are a more difficult matter to determine. As mentioned above, this circuit is breaking new ground in the application of the FDCPA to mortgage foreclosures. *See*, *Glazer*, 704 F.3d at 360. Given the vast differences between judicially managed foreclosures and non-judicial foreclosures, we cabin this holding to the latter. We find that, at a minimum, "collection of the debt" in a statutorily created process such as Michigan's foreclosure by advertisement must include any activities that attempt to satisfy the essential statutorily required elements of that process.

This reading is congruent with our post-*Glazer* case law regarding the purpose of the Dispute Letter and verification requirement. *Haddad v. Alexander, et al*, 758 F.3d 777, 784 (6th Cir. 2014). ("The baseline for [the Dispute Letter and verification requirement] is to enable the

---

[4] <u>Black's Law Dictionary</u> (Editorial Staff, 5th ed. 1979).

consumer to 'sufficiently dispute the payment obligation' . . . . [S]uch an approach is consonant with the congressional purpose of the verification provision."). The district court's reading of § 1692g(b) would frustrate the FDCPA's purpose of giving the debtor the opportunity to dispute the debt—the Dispute Letter would become irrelevant for Michigan foreclosures by advertisement. We therefore hold that the Dispute Letter must "stop the clock" on the initiated foreclosure. The debt collector cannot allow the essential statutory elements of a Michigan foreclosure to proceed after receiving a timely Dispute Letter until it obtains sufficient verification of the debt. This approach obviates the need to explore the activities of the debt collector's agents or independent contractors and instead imposes on the debt collector the duty to "cease" the collection of the debt until the debt collector obtains verification of the debt.

Trott did not cease the collection of the debt after receiving Scott's Dispute Letter. Not only did Trott not cancel the sheriff's sale[5] after it received the Dispute Letter on October 11, three of the newspaper advertisements were published and the home posting occurred after that date. Each of these activities was statutorily required to satisfy Michigan's Foreclosure of Mortgage by Advertisement law. Hence, Trott's failure to stop them after it received the Dispute Letter violated provisions of § 1692g(b) of the FDCPA.

We now consider Scott's other claimed collection activities by Trott. Scott also complains that Trott refused to engage him when he sought clarification of the Notice. Scott cites no legal authority for the contention that Trott was required to respond to Scott's communications. In fact, the FDCPA generally discourages and in some respects outright prohibits extraneous

---

[5] We pause to note that Trott does not even allege that it made an effort, much less a good faith one, to cancel the sheriff's sale, and had Scott's property in fact been sold as originally scheduled, the buyer would have received voidable title. *See Jackson Inv. Corp. v. Pittsfield Products, Inc.*, 162 Mich App. 750, 755-56 (Mich. Ct. App. 1987) (holding that a buyer receives a voidable title where there is a defect in the notice of a foreclosure sale under Mich. Comp. Laws § 600.3208). It seems obvious to us that an unnecessary and onerous legal dispute between a rightful title holder and a bonafide purchaser is precisely among the injustices Congress sought to avoid in including the Dispute Letter requirement in the FDCPA.

communications between a debt collector and a debtor. *See* 15 U.S.C. § 1692c. Trott was acting within the general custom of practice and requirements of the FDCPA by not communicating with Scott.

Finally, Scott alleges that Trott's response in opposition to Scott's motion for temporary injunction should be considered continued debt collection activity under the FDCPA. Scott does not cite, nor are we aware of, any legal principle that would allow filings made during the course of litigation to be used against the moving litigant to satisfy the elements of the alleged civil violation that precipitated the lawsuit. We decline to adopt this position now. Furthermore, opposition to an injunction to preserve an issue is fairly characterized as zealous advocacy on behalf of clients as required by Michigan's rules of professional conduct. Mich. Prof'l Conduct R. 1.3. (CMT: "A lawyer should act with commitment and dedication to the interests of the client and zeal in advocacy upon the client's behalf.").

### III.

We review for abuse of discretion a district court's decision regarding the sufficiency of discovery and assessment of the relevance of discovery motions to determine whether there remain genuine disputes of material facts. *Plott v. General Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1196 (6th Cir. 1995). It is well established that a trial court has broad discretion to control the scope and extent of discovery. *Chrysler Corp. v. Fedders Corp.* 643 F.2d 1229, 1240 (6th Cir. 1981).

Scott argues that the district court erred in granting summary judgment because several discovery motions remained unresolved. However, most of Scott's outstanding motions were presented *after* the expiration of the three-month discovery period set out in the scheduling order. He complains that Trott refused to comply with discovery, however, the district court determined

that many of Scott's requests were covered by privilege. After three months, Scott had still not produced evidence bolstering the allegations of his complaint with respect to Counts 2–6. It was well within the district court's discretion to determine either that additional discovery would not lead to adducing material facts or that Scott already had sufficient discovery opportunity. The district court therefore did not abuse its discretion.

**IV.**

For the foregoing reasons we find that Trott violated the FDCPA by continuing collection activities after receiving Scott's Dispute Letter. We **REVERSE** the district court's summary judgment with respect to the FDCPA claim and **REMAND** for further proceedings consistent with this decision. We **AFFIRM** the remaining portions of the judgment.