NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0507n.06
No. 22-3210

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Dec 07, 2022
DEBORAH S. HUNT, Clerk

ROBERT MITCHELL DUNCAN,

     Plaintiff-Appellant,

v.

SAM'S CLUB, agent of Sam's East, Inc.,

     Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

OPINION

---

Before:  SUTTON, Chief Judge; COLE and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Sam's Club terminated Robert Duncan's employment after it concluded he inappropriately handled a racially charged incident at the store he managed.  Duncan claims Sam's Club fired him not for that reason, but rather because of his age.  The district court concluded the evidence did not support Duncan's claim, and entered summary judgment in Sam's Club's favor.  We affirm.

I.

Hired as a stocker by defendant Sam's Club in 1993, plaintiff Robert Duncan worked his way up to being a Club Manager by 2004.  He held that title at several different locations until settling into that role at the North Dayton, Ohio store in 2008.  As the highest-ranking employee on site, Duncan was responsible for all facets of that location's operations.

The events leading to Sam's Club firing Duncan are relatively straightforward.  On April 2, 2019, store employee Margaret "Ann" Foley walked past a young African American boy at the

store with his family and said, "Oh there's the little monkey." Foley then asked the child's mother if he "likes banana[s]." The customer immediately complained to the store's Assistant Manager, Juliann Naas, who confirmed with Foley that Foley had made the statements. Naas said she apologized to the customer. Naas informed Duncan of the incident later that evening. In response, Duncan directed Naas to just contact a human resources employee for further assistance.

The following morning, Naas learned that the customer had posted on Facebook Foley's racist remarks and Naas's response. The posting described the customer's perspective of the incident, and criticized Naas for not apologizing and refusing to tell the customer how Naas "handled the situation." Numerous comments regarding the customer's post expressed community outrage over the incident, with many calling for further action such as contacting the media, complaining to corporate headquarters, cancelling memberships, and filing civil-rights complaints and lawsuits. Thereafter, Naas informed both Duncan and his supervisor, Market Manager Joe Mohrhaus, that there was "a situation" and that Naas would be referring the matter to the company's "Global Ethic's division." When Naas saw Duncan the next day, April 4, 2019, she told him about the specifics of the Facebook post. Duncan did not make any attempts to view the customer's post and accompanying community comments or inquire further about Foley's conduct, but instead told Naas to just "stay on top of the situation." He then left the store and began a near-two-week vacation.

With Duncan away, Mohrhaus and others within Sam's Club's upper-management quickly became aware both of the specifics of the incident and the store's less-than-appropriate response. They learned that Foley received only a verbal warning for her actions. Mohrhaus took charge. He promptly terminated Foley's employment and assuaged the customer's concerns after speaking with her at length.

Frustrated with what occurred, Mohrhaus met with Duncan upon his return. Duncan confirmed that he should have handled the situation differently by contacting a different person at corporate offices, having a greater sense of urgency, and following up in greater detail to get more specifics about the intensifying and publicly embarrassing episode. They also discussed a separate incident just a few months prior in which Duncan was deemed to have not appropriately handled another complaint about an employee's conduct, one that involved threats by one employee against another that persisted after Duncan initially intervened.

Mohrhaus terminated Duncan's employment a few days later. He contends he made the decision in collaboration with his supervisor and a human resources manager. In addition to his concerns about the immediate incident, Mohrhaus was informed by Sam's Club's progressive-discipline system; Duncan was on "orange" status, meaning a two-level offense—like the instant one—mandated termination.

Duncan claims that Sam's Club terminated his employment because of his age (62). His case hinges on the alleged discriminatory animus of his former supervisor, Raina Brummett. She supervised him in 2004, and again from about 2016 through March of 2019 when Mohrhaus took over for her. Duncan contends that, in 2004, Brummett was frustrated that some older assistant managers were "set in . . . their ways," did not adapt to new technology, challenged her directions, and thus "she made it perfectly clear that [Sam's Club] need[ed] to get rid of some of those old people." (The record is ambiguous as to whether Brummett used age-based language, or if it is just Duncan's characterization of the individuals about whom Brummett was complaining.) And, during her subsequent supervision of him in the latter half of the 2010s, she questioned his abilities. At his deposition, Duncan recalled how she said, "Do you feel like the business is getting away

from you? . . . [Y]ou're not technology savvy. It's passing you by." But she never told him that he was "too old for the business."

Brummett's role is important for Duncan's case because she was present as a witness when Mohrhaus told Duncan that he was terminating his employment. According to Duncan, Mohrhaus told him that "when I first looked at this, . . . I was just thinking about doing another coaching [(i.e., a disciplinary)] level. . . . [But a]fter consulting with Raina, in view of a prior situation, we have decided to just let you – just go ahead and let you go." (That Brummett played a role in Duncan's discharge is, as set forth, contrary to Mohrhaus's testimony.).

After exhausting his administrative remedies with the Equal Employment Opportunity Commission, Duncan filed this lawsuit asserting age discrimination and retaliation under the Age Discrimination in Employment Act and Ohio's state law analogue. Following discovery, the district court granted Sam's Club's motion for summary judgment on all claims; it found plaintiff's discrimination claims unmeritorious, and that he had abandoned his retaliation claims. Plaintiff now appeals, contending the district court erroneously granted summary judgment on his discrimination claims.

## II.

We review the district court's grant of summary judgment de novo. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013). Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Although we view the evidence in the light most favorable to the nonmovant, *Rogers*, 737 F.3d at 1030, "the plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at

trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," we view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–55 (1986).

III.

The Age Discrimination in Employment Act makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Ohio law proscribes similar conduct, *see* Ohio Rev. Code § 4112.14(A), and we analyze these statutes collectively, *see Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012). To make a successful age-discrimination claim, a plaintiff must demonstrate "that age was the reason that the employer decided to act," that is, "but-for" causation. *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 323–24 (6th Cir. 2021) (internal quotation marks omitted).

Duncan disclaims any notion of age animus by Mohrhaus and instead invokes the cat's paw theory of vicarious liability to hold Sam's Club liable for age discrimination. *See Sloat v. Hewlett-Packard Enter. Co.*, 18 F.4th 204, 210 (6th Cir. 2021). That theory applies when a supervisor with discriminatory animus influences the ultimate (and unbiased) decisionmaker. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 417, 422 (2011). An employer is liable under the cat's paw theory "if a supervisor performs an act motivated by [discriminatory] animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action." *Id.* at 422 (emphasis and footnote omitted).

The critical inquiry here is whether Duncan offered sufficient proof demonstrating that Brummett, as the alleged influencer of Mohrhaus's decision, acted with age animus when she

(based on Duncan's version of events) participated in the decision to terminate Duncan's employment. Duncan's sole evidence in this regard is her past statements about older employees (including Duncan) and their inability to adapt to technology. When examining statements that allegedly reflect an age bias, we consider, in the totality of the circumstances, four factors: "(1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 478 (6th Cir. 2002).

Viewing Brummett's statements with these factors in mind, we find insufficient evidence establishing she acted with age animus when she participated in the decision to discharge Mohrhaus. For one, they are "general, vague, or ambiguous comments" that fall short of establishing animus. *See Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 708–09 (6th Cir. 2008) (collecting cases); *see also Stipkala v. American Red Cross*, No. 99-3099, 2000 WL 712378, at *4 (6th Cir. May 23, 2000) (per curiam) (employer's statement that technology "ha[s] outgrown" the employee's capabilities was "age neutral and does not suggest bias based upon age"). That is, Brummett's comments are not the kind of "ageist insults" we have found sufficient, like "grandpa," "dinosaur," and "over the hill," *Williard v. Huntington Ford, Inc.*, 952 F.3d 795, 802, 813–14 (6th Cir. 2020), or, say, "badger[ing an employee] about retirement," *Sloat*, 18 F.4th at 211. For another, none of the statements were made at any time remotely close to Duncan's termination, let alone in relation to it. *See Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 550–51 (6th Cir. 2004) ("Statements by non-decision makers, or statements by decision makers unrelated to the decisional process itself can not suffice to satisfy the plaintiff's burden' of demonstrating

animus.") (brackets and internal quotation marks omitted).  For these reasons, we disagree with plaintiff that Brummett's comments "reveal [her] state of mind and reflect a deep-rooted, ongoing pattern" of ageism.  *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1331 (6th Cir. 1994).  And because Duncan has not demonstrated Sam's Club can be liable under cat's paw liability, we need not address his argument under the more traditional *McDonnell Douglas* burden-shifting framework.  *See Marshall v. Rawlings Co. LLC*, 854 F.3d 368, 379–80 (6th Cir. 2017) (explaining that a plaintiff asserting cat's paw liability "must satisfy the requirements of the *McDonnell Douglas* framework *and* prove that the decisionmaker was the cat's paw of a biased subordinate") (emphasis added).

## IV.

For these reasons, we affirm the district court's judgment.