NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0230n.06

No. 18-3057

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Apr 30, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| THE SCOTT FETZER COMPANY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| ZURICH AMERICAN INSURANCE COMPANY, | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE:     **BATCHELDER, GIBBONS, and ROGERS, Circuit Judges.**

**ALICE M. BATCHELDER**, **Circuit Judge**.  This case, brought pursuant to diversity jurisdiction, involves an insurance coverage dispute between The Scott Fetzer Company ("Fetzer"), the insured, and Zurich American Insurance Company ("Zurich"), the insurer.  The legal dispute turns on the interpretation of the word "occurrence" in the insurance policy.  Fetzer wants the court to find that the events triggering insurance coverage constitute just one "occurrence."  If there is just one occurrence, Fetzer is responsible for only one deductible payment.  Zurich wants the court to find that the triggering events constitute multiple "occurrences."  If there are multiple occurrences, Fetzer must pay multiple deductibles.  In the district court, Fetzer and Zurich both filed summary judgment motions based on their interpretations, and the court ruled in favor of Zurich.  The district court erred because under Ohio law—which the parties agree controls here—an  insurer attempting to defeat coverage must show

that its interpretation of the insurance contract is the only reasonable interpretation. Zurich has not done so. We **REVERSE** and **REMAND**.

## I.

In late 2013, three women filed a lawsuit against Fetzer (doing business as "The Kirby Company" [hereinafter "Kirby"]), Crantz Development LLC, and John Fields. The women claimed John Fields had sexually assaulted them on numerous occasions between May 2012 and January 2013. Fields was an independent dealer of vacuum cleaners who worked for Crantz Development, LLC. Crantz was a factory distributor of Kirby vacuums, which are manufactured by Fetzer. The women alleged multiple instances of verbal abuse and harassment, inappropriate touching, forced sexual acts, and rape. A number of these charges resulted in felony and misdemeanor convictions. Based on these incidents, the women asserted numerous claims of assault and battery, intentional infliction of emotional distress, and false imprisonment against Fields.

Fields had worked for Fetzer (through its Kirby subsidiary) off and on since the 1970s, and over the decades he worked for them he was charged with multiple offenses, including embezzlement, unlawful imprisonment, domestic abuse, and rape. The women asserted that Fetzer and Crantz Development were negligent in, among other things, hiring Fields as an independent dealer, allowing Fields to go on sales trips with the women, and failing to have policies and procedures in place to prevent sexual harassment. In the alternative, the women asserted claims against Fetzer alone for negligently failing to take appropriate precautions to prevent its independent contractors from selecting employees like Fields, and for negligent supervision of its independent distributor in its hiring practices. The women alleged that after receiving Fields's

application to become a Distributor Trainee, Kirby did only a limited background check on Fields, which showed that Fields had lied about his past criminal record. However, according to the women, had Kirby completed a national search instead of a regional search, it would have discovered his criminal record was much more substantial. Despite the knowledge that "Fields had spent almost a year in jail for beating up his wife in 2000, and despite the fact that Kirby knew that Fields lied about his criminal record, Kirby approved Fields to be a Distributor Trainee."

A little over a year after he applied to be a Distributor Trainee, Fields applied to become a Factory Distributor. According to the women, Fields "again lied about his criminal record and Kirby again learned of his criminal record." But despite learning about Fields's criminal past, "Kirby approved Fields' application to become a Factory Distributor." In the ensuing years, Fields continued to commit crimes, including forcible rape, first degree domestic violence, unlawful imprisonment, and assault. While Fields was awaiting trial in the forcible rape case, Kirby learned that he had defrauded elderly customers and it terminated his factory distributorship. But when Fields got out of prison in February 2012, he actively sought and obtained employment with Kirby and began selling their vacuums again. According to Fetzer, despite Fields's long history of involvement with Kirby, Fetzer did not directly employ him. Nevertheless, Fetzer's relationship with Fields was substantial enough to motivate Fetzer to enter into settlement agreements with the three women.[1]

After settling with the three women, Fetzer requested reimbursement from Zurich under two general liability insurance policies Zurich had written covering Fetzer.[2] Under the policies, Zurich agreed to pay $2 million per "occurrence" of bodily injury, but Fetzer was responsible for

---

[1] Fetzer has not admitted liability for any of the claims asserted against it in the women's lawsuit, nor has it conceded the truth of any of the allegations against it in the women's petition.

[2] The parties agree these two policies are identical with respect to all material terms. The only reason there are two policies at issue is because the events alleged by the women crossed policy years.

paying the first $1 million for each "occurrence." Of the three settlements, only one exceeded the per-occurrence deductible amount. Zurich paid the amount that exceeded the deductible, but it refused to pay anything for the other two settlements. It was this refusal that started the dispute between Fetzer and Zurich. Specifically, the two companies are disputing what counts as an "occurrence" in the policy. Fetzer contends that the "occurrence" was its negligent hiring and supervision of Fields, which would limit the number of occurrences to one, and therefore Fetzer would have to pay only one deductible. The full amounts of the other two settlements would then be payable by Zurich. Zurich argues that Fields's actions against each individual woman were all separate occurrences, meaning that there were three occurrences and Fetzer was responsible for paying three separate deductibles.

The insurance policy defines the term "occurrence" in two separate places. The first states that an occurrence is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The Deductible Endorsement also contains a definition of occurrence:

> "Each 'occurrence' means:
>
> For any coverage described in the Schedule to which the each 'occurrence' basis applies, to all sums payable for other than 'ALAE'[3] as the result of an accident, including continuous or related exposure to substantially the same harmful conditions, regardless of the number of persons or organizations who sustain damages or to whom sums are payable because of that 'occurrence.'"

Both Fetzer and Zurich filed motions for summary judgment arguing for their own interpretations of the term "occurrence."

---

[3] The Plaintiff's Brief has the following footnote to explain the term "ALAE":

> "ALAE refers to and stands for "allocated loss adjustment expense," defined at paragraph C.4. of the Deductible Endorsement. It is immaterial to the dispute before the Court."

The case was referred to a magistrate judge. The magistrate judge broke the legal analysis down into two inquiries. First, what constitutes an "occurrence"? And second, what is the correct number of occurrences? To the first inquiry, the magistrate judge found that "the 'occurrences' at issue are the negligent acts of Fetzer, including its failure to inform each [woman] of material information, its policies regarding sexual harassment, its hiring and retention of Fields, and its supervision of Fields in his interactions with each [woman]." Regarding the second inquiry, the magistrate judge recommended that the "court should reject Fetzer's position that there was a single occurrence of negligent hiring, retention, and supervision by Fetzer, and hold that the claims in the Petition in the underlying Missouri lawsuit alleged three separate occurrences under the Policies." The district court adopted the magistrate judge's recommendations.

## II.

We review de novo a district court's summary judgment ruling. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We view all evidence in the light most favorable to the non-moving party. *Rogers*, 737 F.3d at 1030.

## III.

### A.

There are several Ohio principles of law that govern our interpretation of insurance contracts. The first principle of those is that "where provisions of a contract of insurance are

reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, 1383 (Ohio 1988). The Ohio Supreme Court has repeatedly affirmed this bedrock principle of law. *See, e.g., Faruque v. Provident Life & Acc. Ins. Co.*, 508 N.E.2d 949, 952 (Ohio 1987) ("Language in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer.") (quoting *Buckeye Union Ins. Co. v. Price* 313 N.E.2d 844 (Ohio 1974); *Thompson v. Preferred Risk Mut. Ins. Co.*, 513 N.E.2d 733, 736 (Ohio 1987) ("[I]t is beyond question that any ambiguity will be resolved in favor of the insured and against the insurer."); *Marusa v. Erie Ins. Co.*, 991 N.E.2d 232, 234 (Ohio 2013) ("Because the cause before us involves the interpretation of an insurance contract, any ambiguities will be construed strictly against the insurer and liberally in favor of the insured.") (citation omitted).

The second important principle of Ohio law is that although the party seeking coverage under a policy generally must show the policy covers the loss in question, *Chicago Title Ins. Co. v. Huntington Nat'l Bank*, 719 N.E.2d 955, 959 (Ohio 1999), if an insurer wants to interpret a clause in an insurance contract so as to defeat coverage, "it must demonstrate that the clause in the policy is capable of the construction it seeks to give it, and that such construction *is the only one* that can be fairly placed upon the language." *Bosserman Aviation Equip., Inc. v. U.S. Liab. Ins. Co.*, 915 N.E.2d 687, 692–93 (Ohio Ct. App. 2009) (emphasis added); *see also Lane v. Grange Mut. Companies*, 543 N.E.2d 488, 490 (Ohio 1989) ("[A]n exclusion from liability must be clear and exact in order to be given effect.") (citation omitted).

These two principles decide this case. All Fetzer must do to prevail is show there is ambiguity in the contract and provide a fair interpretation of the ambiguity under which it qualifies for coverage. It is not necessary for us to take a position on whether Fetzer's interpretation of the

contract is the best one so long as it is reasonable. In its briefs and arguments before the district court, Fetzer has amply demonstrated there is more than one interpretation that can fairly be placed upon the language.

**B.**

On the first inquiry—what is an "occurrence"?—Zurich does not put up a fight. Zurich states that "[n]o matter the 'occurrence'—the negligence of Scott Fetzer or the separate assaults by Fields, it does not change the outcome—[the underlying lawsuit] alleged multiple occurrences for which multiple deductibles under the Policies applied." Zurich's acknowledgment that there are two different ways to look at the definition of "occurrence" shows there is ambiguity in the definition. Additionally, Fetzer cites ample case law showing that some courts have interpreted the word "occurrence" to refer to the insured party's negligent hiring and supervision even when multiple parties have been harmed. *See, e.g., Donegal Mut. Ins. Co. v. Baumhammers* 938 A.2d 286 (Pa. 2007) (finding that parents' failure to supervise their son, which resulted in five shooting deaths and one injury, was one "occurrence," not six occurrences, under the parents' insurance policy); *see also Lee v. Interstate Fire & Cas. Co.*, 86 F.3d 101 (7th Cir. 1996) (holding that negligent supervision constitutes one "occurrence" when the insured receives no danger signals or warnings about its employee's conduct). We are persuaded there is more than one way to interpret the word "occurrence." Therefore, Fetzer has demonstrated ambiguity in the term.

The second principle of Ohio law requires us to determine whether Fetzer's interpretation can fairly be placed on the language of the contract. For two reasons we find that it can. First, as noted above, courts in other jurisdictions have found that the interpretation of "occurrence" adopted by Fetzer is a reasonable one. Second, a plain language reading of the policy is consistent with Fetzer's interpretation. In Ohio, "insurance contracts must be construed in accordance with

the same rules as other written contracts," *Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 597 N.E.2d 1096, 1102 (Ohio 1992), which means that "in reviewing an insurance policy, words and phrases used therein must be given their natural and commonly accepted meaning . . . to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined." *Id.* (internal quotation marks omitted). In applying this principle to the definition of "occurrence" in the policy, it is helpful to break the definition into two parts: it is (1) "an accident" which includes (2) "continuous or repeated exposure to substantially the same general harmful conditions." Starting with part (1), the word "accident" does not appear to sit well with Fetzer's interpretation of the contract. Fields did not assault his victims by accident, nor did Fetzer accidentally hire Fields. But Fetzer argues that Fields's assault of the women was an accident from Fetzer's standpoint and cites case law to support this interpretation. *See Safeco Ins. Co. of Am. v. White*, 913 N.E.2d 426, 432 (Ohio 2009) ("When a liability insurance policy defines an 'occurrence' as an 'accident,' a negligent act committed by an insured that is predicated on the commission of an intentional tort by another person, e.g., negligent hiring or negligent supervision, qualifies as an 'occurrence.'"). The ordinary reader may not find that this is the "natural and commonly accepted meaning" of the word "accident," but all Fetzer is required to do is show a reasonable alternative reading. An Ohio Supreme Court decision that supports its interpretation certainly meets that threshold.

Moving on to part (2) of the definition, Fetzer again prevails. The focus of part (2) of the definition is the word "exposure." The most obvious thing that the three women were exposed to was Fields himself. But under Fetzer's reading of the contract, the "accident" was not that the women were exposed to Fields, but that they were exposed to Fetzer's negligent supervision of Fields. While in our view it may be semantically awkward to argue that what the women were

exposed to was Fetzer's negligent supervision, it is nonetheless the case that Fetzer's burden is not to prove that its reading is the most reasonable one. Fetzer needs only to prove its reading is *a* reasonable one—and it has the case law to do just that. In Ohio, "public policy permits a party to obtain liability insurance coverage for negligence related to sexual molestation when that party has not committed the act of sexual molestation." *Doe v. Shaffer*, 738 N.E.2d 1243 (Ohio 2000) (paragraph one of syllabus). Courts in other jurisdictions facing similar cases and applying law similar to Ohio's have determined that the relevant "occurrence" can fairly be interpreted as negligent supervision, not the acts perpetrated by the bad actor. For example, in *Lee*, the Seventh Circuit applied Rhode Island law in a case involving abuse by a priest to hold that "[t]he tort [was] poor supervision" by the diocese. *Lee*, 86 F.3d at 104. In *Donegal*, the case where the insured parents' son shot six people, the Pennsylvania Supreme Court rejected a calculation of the number of occurrences that was based on the number of victims, and wrote that "to determine the number of 'occurrences' for which an insurance company is to provide coverage, the more appropriate application of the cause approach is to focus on the act of the insured that gave rise to their liability." 938 A.2d at 295. The court went on to say that "[b]ecause coverage is predicated on Parents' inaction, and the resulting injuries to the several victims stem from that one cause, we hold that Parents' alleged single act of negligence constitutes one accident and one occurrence." *Id.* And finally, in *Westfield Ins. Co. v. Tech Dry, Inc.*, we applied Kentucky law to find that a company whose employee murdered a customer "is entitled to [insurance] coverage because [the company's] negligent hiring and retention of [the employee] constitutes an 'accident,' and therefore an 'occurrence,' under the terms of the governing policy." 336 F.3d 503, 510 (6th Cir. 2003).

And Fetzer's interpretation of "occurrence" is reasonable because of the language of the insurance policies themselves. The insurance policies provided coverage for Fetzer for "bodily injury" only when the injury was "caused" by an "occurrence." As previously noted, an occurrence means an "accident." The word "accident" is not defined, so we take the common definition: "Something that happens by chance or without expectation; an event that is without apparent or deliberate cause." OXFORD ENGLISH DICTIONARY (3D ED. 2011). Because Zurich does not dispute coverage, the language of the insurance policy requires that there be an accident present for the coverage to be triggered. But as Fetzer points out, "the intentional assaults by Fields [can] never be considered an 'accident,' as required to constitute an occurrence under the Policies." Indeed, Fields's very long history abusing women shows that his actions were purposeful and did not occur "without expectation" or "without apparent or deliberate cause." If Fields's actions cannot be considered an accident, the only other possibility we see is that it is Fetzer's conduct that constitutes the accident: from Fetzer's perspective, the "accident" was its negligently supervising an independent dealer whom Fetzer never directly employed, and who sexually abused the women with whom he was working.

For the foregoing reasons, the relevant occurrence is Fetzer's negligent supervision of Fields.

## C.

The second inquiry is: how many occurrences were there? The answer to that inquiry flows logically from the answer to the first inquiry. If the relevant "occurrence" is negligent supervision, there is only one occurrence. This conclusion is buttressed by Ohio law, which follows the cause test. Under the cause test, "the number of occurrences is determined by reference to the cause or causes of the damage or injury, rather than by the number of individual claims." *Cincinnati Ins.*

*Co. v. ACE INA Holdings, Inc.*, 886 N.E.2d 876, 885 (Ohio Ct. App. 2007). Additionally, "where there is but one proximate, uninterrupted and continuous cause, all injuries and damages are included within the scope of that single proximate cause." *Progressive Preferred Ins. Co. v. Derby*, No. F-01-002, 2001 WL 672177, at *3 (Ohio Ct. App. June 15, 2001). Because we have decided that the occurrence in this case could be negligent supervision, and because under Ohio law where there is one proximate cause all injuries are included within the scope of that cause, it is reasonable to read the policy as Fetzer asks us to and determine that there is just one occurrence. No further analysis is necessary.

**IV.**

Under Ohio law, a party seeking to interpret a clause in an insurance policy so as to deny insurance coverage must show its interpretation of the contract is the only fair one. Zurich has not done that. For that reason, we **REVERSE** the judgment of the district court and **REMAND** with instructions to enter judgment for Fetzer on Fetzer's motion for summary judgment.