**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**MIDWEST SUSPENSION AND BRAKE,**
**Defendant–Appellant.**

**No. 93–2359.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 24, 1995.

Decided March 27, 1995.

---

Andrew C. Mergen (argued and briefed), Peter E. Jaffe, Thomas A. Mariani, Jr., U.S. Dept. of Justice, Land & Natural Resources Div., Washington, DC, for plaintiff - appellee U.S.

Thomas J. Budzynski (argued and briefed), Clinton, MI, for defendant - appellant Midwest Suspension and Brake.

Before: JONES, CONTIE, and MILBURN, Circuit Judges.

CONTIE, Circuit Judge.

Defendant-appellant, Midwest Suspension and Brake ("Midwest"), appeals the judgment in favor of plaintiff-appellee, the United States, in this action for alleged violations of the Clean Air Act and other related environmental regulations.

## I.

This is an appeal of a judgment in a civil action for injunctive relief and civil penalties against defendant Midwest pursuant to Section 113 of the Clean Air Act ("the Act"), 42 U.S.C. § 7413, for violations of § 112 of the Act, 42 U.S.C. § 7412 and for violations of

the National Emission Standards for Hazardous Air Pollutants for Asbestos, 40 C.F.R. Part 61, Subpart M ("the Asbestos NESHAP"), both of which govern the emission of asbestos.[1] The action also alleged violations by Midwest of an Administrative Order ("AO") issued by the Environmental Protection Agency ("EPA") pursuant to § 113(a)(3) of the Act, 42 U.S.C. § 7413(a)(3), alleging that Midwest violated waste handling requirements specified in the AO and in the Asbestos NESHAP. These alleged violations occurred at Midwest's place of business located at 3411 West Fort Street, Detroit, Michigan.

Midwest is engaged in the business of supplying parts for heavy duty truck suspensions, steering systems, and brakes. It performs two operations involving brake systems. The first includes the purchase and assembly of component parts into brake shoes. The second, which is the subject of this case, involves the collection and rehabilitation of used brake shoes for resale. During the rehabilitation process, brake shoes are disassembled and parts, which may contain asbestos, are discarded. Some brake shoes are "delined" in the rehabilitation process, a procedure performed by removing rivets that hold the brake lining to the brake table, and then cleaning, sandblasting, painting, and relining the table with a new brake block. Old brake blocks and brake linings, which contain asbestos, and rivets are discarded.[2]

During an EPA inspection of the Midwest facility, numerous emissions of asbestos, occurring during the delining process, were documented. Midwest employees also engaged in waste disposal activities causing the

release of asbestos. The shop floor also yielded detectable amounts of asbestos.

As a result, EPA issued a "finding of violation." EPA informed Midwest that it (Midwest) violated the "no visible emission requirement" of the Asbestos NESHAP, 40 C.F.R. § 61.152(b). To resolve the matter, Midwest agreed to the issuance of an Administrative Order, No. EPA-5-87-113(A) a-2 (the "AO" referenced above). The AO required that Midwest comply with the Act and the Asbestos NESHAP, including the "no visible emission requirement" of 40 C.F.R. § 61.152(b).

As a preventive measure, the AO specified waste management requirements for Midwest operations including the following: (1) that delining wastes fall into a sturdy cardboard box, instead of falling to the ground; (2) that the box be securely closed and wrapped so that it would not leak when discarded; and (3) that the box bear a warning label. The AO also required that the floor of the delining area be vacuumed, not swept, and that the vacuum residue be tightly sealed before disposal. Finally, the AO required that asbestos waste be segregated and separately disposed of, without compacting, at a landfill.

Subsequent EPA inspections of the Midwest facility found numerous violations of the AO. Asbestos wastes were being compacted, resulting in visible emissions. Vacuum residue was not tightly sealed, and boxes of delining waste were improperly taped, resulting in visible emissions during landfill disposal. EPA testing verified that the emissions were in fact asbestos.[3]

The Wayne County Health Department also inspected the Midwest facility in order

---

1. Section 112 of the Act, 42 U.S.C. § 7412, authorizes the Administrator of the Environmental Protection Agency to publish a list of "hazardous air pollutants" and to prescribe emission standards for hazardous pollutants in the form of National Emission Standards for Hazardous Air Pollutants ("NESHAP"). A hazardous air pollutant is defined as an air pollutant "which in the judgment of the Administrator causes, or contributes to, air pollution which may reasonably be anticipated to result in an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness." 42 U.S.C. § 7412(a)(1). A NESHAP is to be set at a level to

provide an "ample margin" of safety for public health. 42 U.S.C. § 7412(b)(1)(B).

2. The brake linings delined by Midwest were shown to contain asbestos throughout the period of the visible emissions violations alleged and Midwest previously stipulated to the asbestos content of the brake linings it delines.

3. A very detailed account of the EPA inspections and alleged violations is provided in the district court's published opinion at 824 F.Supp. 713 (E.D.Mich.1993).

to check compliance with the AO. Its inspection likewise revealed numerous violations of the AO. Rivets and linings were dropped on the shop floor, constituting violations of both the Asbestos NESHAP regulations and the AO. The shop floor was broom cleaned, and boxes of asbestos waste were not labelled and were not packaged properly. The Health Department notified Midwest of the violations, and Midwest indicated in response by letter that it was taking actions to correct the deficiencies.

Similar violations were noted during subsequent inspections, and efforts were made to have Midwest comply with applicable laws and regulations and AO requirements. Those efforts failed, and the government filed the present lawsuit.

On January 11, 1991, the United States filed suit against defendant Midwest pursuant to Section 113 of the Clean Air Act, 42 U.S.C. § 7413, claiming that Midwest violated Section 12 of the Act, 42 U.S.C. § 7412, and certain air pollution control regulations, 40 C.F.R. § 61, Subpart M, including the Asbestos NESHAP, which govern the standards concerning the emission of asbestos, a listed air pollutant. The government further alleged that Midwest violated the Administrative Order ("AO") previously issued to Midwest pursuant to § 113(a)(3) of the Act, 42 U.S.C. § 7413(a)(3). The United States sought injunctive relief and civil penalties of up to twenty-five thousand ($25,000) dollars per day for each violation.

Following the completion of discovery, on September 9, 1991, the United States filed a Motion for Summary Judgment as to Midwest's liability, which the district court granted on August 17, 1992. On September 15, 1992, Midwest submitted a Motion for Reconsideration. On November 13, 1992, the court granted Midwest's Motion for Reconsideration, reversed its former order by denying the United States' motion for summary judgment, and set the case for trial.

The district court presided over a bench trial from April 1, 1993 to April 6, 1993. On June 16, 1993, the district court issued its findings of fact and conclusions of law in favor of the United States, finding that Midwest had violated 42 U.S.C. § 7413 and the

Asbestos NESHAP. The district court ordered Midwest to pay a $50,000 civil penalty, but declined to award the government the injunctive relief it sought. On June 28, 1993, Midwest moved for a new trial. The district court denied this motion and entered its decision on September 16, 1993. Midwest timely appealed both the judgment and the district court's denial of its motion for a new trial.

## II.

■ We must first decide whether the district court abused its discretion in denying defendant leave to amend its amended answer to the United States' complaint shortly before trial was to begin. Defendant contends that Midwest falls under the exemption to being regulated by the Asbestos NESHAP, because the exemption permits businesses that primarily install asbestos-containing materials ("ACMs") in motor vehicles to continue installing ACMs unregulated until 1995. 40 C.F.R. § 61.149(a). Defendant argues that the trial court ruled in error that Midwest had admitted in its pleadings that it was not primarily an installer of ACMs in motor vehicles and thus was not exempt from regulation under the Act.

Paragraph 27 of the government's complaint had alleged:

The standards for fabrication of commercial asbestos apply to Midwest pursuant to 40 C.F.R. § 61.149(a), because Midwest does not primarily install asbestos friction materials [ACMs] on motor vehicles.

Midwest, both in its original answer and in its amended answer, stated in response to this allegation: "Admit, but affirmatively state that they do install friction materials on motor vehicles." The district court and the United States both construed this answer to be an admission by Midwest that it was not exempt from regulation because it did not *primarily* install asbestos friction materials on motor vehicles. The district court would not allow Midwest to amend its pleadings shortly before trial in order to change its answer to Paragraph 27 and to contend that it was exempt from regulation under the Act because the Company no longer admitted

that it was not primarily an installer of ACMs in motor vehicles.

We review the decision of the district court to deny defendant's motion to amend its answer under an abuse of discretion standard. *Martin v. Associated Truck Lines, Inc.,* 801 F.2d 246, 248 (6th Cir.1986). The amendment of pleadings is governed by Rule 15 of the Federal Rules of Civil Procedure, which states that courts shall permit amendment "when justice so requires." The district court in the present case concluded that justice precluded amendment because Midwest's undue delay in moving to amend its answer to the government's complaint would have unfairly prejudiced the United States.

We agree. Although Rule 15(a) indicates that leave to amend shall be freely granted, a party must act with due diligence if it intends to take advantage of the Rule's liberality. *Troxel Mfg. Co. v. Schwinn Bicycle Co.,* 489 F.2d 968 (6th Cir.1973), *cert. denied,* 416 U.S. 939, 94 S.Ct. 1942, 40 L.Ed.2d 290 (1974). Midwest filed an answer to the government's complaint in February 1991 and an amended answer in April 1991. It was not until February 1993, two years after the complaint was filed, that Midwest sought to amend its amended pleadings. Midwest thus failed to proceed with due diligence and this delay would have unduly prejudiced the United States for the following reason. Midwest moved to amend on February 22, 1993 about a month before the beginning of trial and 18 months after discovery had been completed. In making its discovery requests, the United States had relied on Midwest's previous answer to paragraph 27 of the complaint, indicating that Midwest conceded it was not exempt from regulation. If the district court had granted Midwest's motion and allowed it to change its answer to state that it was exempt, the United States would have had to undertake a new and expensive round of discovery to rebut Midwest's contention that it was exempt by proving that Midwest was not primarily an installer of asbestos friction products on motor vehicles. Thus, to have granted Midwest's motion for leave to amend its answer to paragraph 27 of the government's complaint shortly before trial would have unduly preju-

diced the United States. The district court is affirmed on this issue.

## III.

Midwest next contends that it does not fall under the NESHAP or the Clean Air Act as a processor of asbestos, because it does not fabricate friction products containing asbestos within the meaning of the Act.

Under the Act, the Asbestos NESHAP standards apply in part to operations which "fabricate friction products containing commercial asbestos." 40 C.F.R. § 61.149(a). "Fabricating" is defined as "the processing of a manufactured product that contains commercial asbestos." 40 C.F.R. § 61.141. Specifically, the regulation states that "fabricating" is:

> *any* processing of a manufactured product that contains commercial asbestos, with the exception of processing at temporary sites for the construction or restoration of facilities.

40 C.F.R. § 61.141 (emphasis added). Defendant contends that although "fabricating" is defined as "processing," the district court defined "processing" so broadly that anyone who touched a substance containing asbestos would fall under the Act. Defendant contends that the only other place that the word "process" is defined in an environmental context is under the regulations for the Toxic Substances Control Act, 15 U.S.C. § 2601, *et seq.;* 40 C.F.R. § 763.63(k), which defines "process" as "the preparation of a chemical substance or mixture, after it is manufactured, for distribution and commerce with the purpose of obtaining an immediate or eventual commercial advantage for the processor." Defendant contends that it is not a "processor" of asbestos according to the above definition and the plain meaning of the word and that the Asbestos NESHAP does not apply to its operations.

This argument has no merit. Defendant's definition of "processing" is taken from EPA regulations promulgated under the authority of the Toxic Substances and Control Act ("TSCA"), 15 U.S.C. § 2601, which simply is not relevant to the present case. Midwest is not alleged to have violated TSCA, a statute

expressly concerned with the exposure of human beings to "chemical substances and mixtures," but with a violation of the Clean Air Act, concerned with exposure of human beings to asbestos.

■ Furthermore, the district court did not define "processing" too broadly in finding that Midwest came within the meaning of "processing" in the definition for "fabrication." According to the NESHAP definition of "fabrication," it includes *any* processing of a manufactured product. A plain reading of this definition is that "fabricating" is not limited to specific types of processes, such as preparing chemical substances, but entails *any* processing of a manufactured product containing commercial asbestos. Moreover, the EPA has explained that the definition of "processing" includes operations which "cut, shape, assemble, mix, or otherwise alter" a manufactured product that contains commercial asbestos. 39 Fed.Reg. §§ 15396, 15397 (May 3, 1974).

The district court found that Midwest's brake refurbishing operation clearly falls within this definition of processing, and therefore Midwest is considered a business that "fabricates" friction products containing commercial asbestos within the meaning of the Act. The court found that Midwest's business involves, among other things, the production and sale of rebuilt brake shoes for medium and heavy duty trucks. As described by Robert Cuipak, Midwest's general manager, Midwest's process of making rebuilt brake shoes includes the following:

> [W]e take used brake shoes, deline them, inspect them to make sure that they are still to the original manufacturer's specifications, clean them, paint them and then reline them with brake lining. And those are made available as second hand shoes.

The district court found that Midwest "fabricates" brake shoes by "cutting" and "altering" used brake shoes by removing their linings, which contain asbestos, and by assembling refurbished brake cores with new linings, which may contain asbestos, for sale as rebuilt shoes. The court found that the entire rebuilding operation is a "process," and that Midwest's production of rebuilt brake shoes, which includes a delining process, a sandblasting process, an assembly of the cores and linings, and, in some cases, the cutting, grinding, and drilling of strip stock, constitutes "fabrication" within the meaning of the Act.

We agree with the district court that these operations come within the definition of "fabrication"—the processing of friction materials containing asbestos—as contemplated by the Act. Substantial evidence in the record indicates that during Midwest's operations, particularly during the delining phase where the plow on the machines breaks and shatters the used brake linings containing asbestos, and during sandblasting, where asbestos fibers encapsulated in rust on the brake cores are pulverized into trillions of fibers, asbestos-containing material is plainly being "cut" and "otherwise altered."

■ As stated above, the EPA interpretation of the word "processing" includes operations which "cut, shape, assemble, mix, or otherwise alter" a manufactured product that contains commercial asbestos. EPA's interpretation of its regulations is entitled to great deference. *See Stinson v. United States,* —— U.S. ——, ——, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993) (agency's interpretation of its regulations must be given controlling weight unless it is plainly erroneous); *Arkansas v. Oklahoma,* 503 U.S. 91, 108–11, 112 S.Ct. 1046, 1058–59, 117 L.Ed.2d 239 (1992) (EPA's reasonable, consistently held interpretation of standards is entitled to substantial deference); *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–02, 13 L.Ed.2d 616 (1965) (when the construction of an administrative regulation is in issue, deference to the agency's interpretation is even more clearly in order); *First National Bank of Lexington v. Sanders,* 946 F.2d 1185, 1189–90 (6th Cir.1991); *Compton v. Tennessee Dept. of Public Welfare,* 532 F.2d 561, 565 (6th Cir.1976).

Furthermore, there is evidence in the record to support the government's contention that the Asbestos NESHAP was amended specifically so that the regulations would apply to brake relining operations, such as Midwest's operation. In 1973, the EPA conducted an extensive investigation of fabricating

facilities and concluded that facilities that process brake shoe linings generated significant amounts of asbestos dust. 39 Fed.Reg. §§ 38064, 38065. For this reason, in 1975, the EPA amended the Asbestos NESHAP to include the fabricating standard, which regulates facilities that "fabricate" friction products. 40 Fed.Reg. § 48292 (October 14, 1975); 39 Fed.Reg. § 38064–65 (October 25, 1974). Furthermore, at trial, in the present case, Rebecca Frey, who was an Environmental Engineer with the EPA between 1984 and 1989 and lead coordinator of enforcement efforts against friction product fabricators in EPA region V, testified that brake relining operations are the principal category of fabricators regulated under the friction product fabricating standards. The friction product fabricating standards were promulgated in 1975 and published to provide a full opportunity for notice and comment by the public. 40 Fed.Reg. § 48292 (October 14, 1975). Therefore, Midwest's allegation that the terms of the regulation were too broad to give it notice that its operations would be covered has no merit. Midwest, as a business dealing with asbestos, was under a duty to be aware of the published regulations and their interpretation.

For these reasons, the district court is affirmed on this issue. The district court did not err in determining that Midwest's rehabilitation of brake shoes constitutes "fabrication of friction products containing commercial asbestos" within the meaning of the Clean Air Act.

## IV.

■ Midwest next argues that even if the Asbestos NESHAP applies to its operations, there was insufficient evidence in the record to show that prohibited visible emissions of asbestos occurred at its facility. Although Midwest does not contest the fact that at various times both EPA and state inspectors saw dust emissions resulting from Midwest's handling of asbestos-containing materials, Midwest asserts that these dust emissions are insufficient proof of a violation, because the inspectors did not see, with the naked eye, asbestos particles floating in the dust.

The Asbestos NESHAP defines visible emissions as "any emissions containing particulate asbestos material that are visually detectable without the aid of instruments." 40 C.F.R. § 61.141.[4] The parties disagree about the meaning of this definition, disputing which word the phrase "that are visually detectable without the aid of instruments" modifies. Defendant contends that the phrase modifies "particulate asbestos material," which must be visible to the naked eye floating in the air. The government contends that the phrase modifies "any emissions," and the definition therefore does not require the visual observation of airborne asbestos particles, but only requires visual observation of the dust emissions which contain the invisible particles.

We agree with the United States. At trial, the government's expert witness, Steiner, testified that it is impossible to observe particulate asbestos fibers with the naked eye due to their microscopic size. Appendix p. 423–26. Moreover, the United States' interpretation of the sentence is supported by the fact that the verb in the sentence (are) is in the plural form, indicating that the subject of the verb is the plural word "emissions," not the singular word-phrase "particulate asbestos material." The Asbestos NESHAP's definition of visible emissions, thus, does not require the visual observation of particulate asbestos material, but only requires visible observation of the emissions, which contain the invisible particles.

There is substantial evidence in the record, which is discussed in great detail in the district court opinion, to support the district court's determination that a showing of visible emissions was plainly met in the present case. The district court is affirmed on this issue.

## V.

■ Midwest contends that the district court "did not establish any nexus whatsoever between the violations claimed and the penalties assessed," and therefore the penalties must be reversed *in toto* or the case

---

4. Particulate asbestos material is "finely divided particles of asbestos materials." *Id.*

must be remanded for a new trial for a determination of the nexus between the violations claimed and the penalties assessed.

We review the assessment of a civil penalty under an abuse of discretion standard. *U.S. Environmental Protection Agency v. Environmental Waste Control, Inc.,* 917 F.2d 327, 335 (7th Cir.1990), *cert. denied,* 499 U.S. 975, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991), citing *United States v. ITT Continental Baking Co.,* 420 U.S. 223, 230 n. 6, 95 S.Ct. 926, 931 n. 6, 43 L.Ed.2d 148 (1975).

Midwest's argument that the district court did not establish any nexus whatsoever between the violations claimed and the penalties assessed has no merit. To the contrary, the district court found that there were a total of 20 violations of the Clean Air Act subject to the civil penalty provisions of the Act. Of these 20 violations, 16 were violations of an administrative order and four were violations of the "no visible emission" standard. Because the penalty provision of the Act provides that the government may recover a civil penalty of not more than $25,000 per day for each violation, the court determined that Midwest was potentially liable for $500,000 in civil penalties. However, the court reduced the civil penalty amount to $50,000, because that figure represented 25% of Midwest's net income in 1992. The court concluded that this amount, which represents $2,500 per violation (10% of the statutory maximum), was both sufficient to deter Midwest from allowing future violations and sufficient to punish Midwest for past violations. Thus, the district court did make a connection between the number of alleged violations and the damages assessed and is affirmed on this issue. *U.S. Environmental Protection Agency v. Environmental Waste Control, Inc.,* 917 F.2d 327, 335 (7th Cir.1990), *cert. denied,* 499 U.S. 975, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991).

## VI.

Finally, we must decide whether the district court abused its discretion in denying defendant's motion for a new trial pursuant to Fed.R.Civ.P. 59(a).

Defendant Midwest made a motion for a new trial, asserting that it had understood an earlier ruling of the district court of November 13, 1992, to require that particles of asbestos be visible to the naked eye in order for there to be a violation of the Act. Midwest asserted that its entire trial strategy had been based on this earlier ruling, and the court "has thus classically sandbagged the defendant" by subsequently holding that the asbestos particles did not have to be observable by the naked eye.

This contention has no merit. Only four of the violations alleged at trial were specific violations of the "no visible emissions" standard. Violations of the administrative order on consent violations, which were also at issue at trial, did not all require the actual observance of visible emissions. Thus, defendant should not have based its entire trial strategy on what the "visible emission" standard was going to be, because other allegations, which did not require that visible emissions be observed, were alleged.

Moreover, the district court did not abuse its discretion in denying Midwest's motion for a new trial. *Logan v. Dayton Hudson Corp.,* 865 F.2d 789, 790 (6th Cir.1989). The evidence indicates defendant was on notice of the district court's change in opinion in regard to the definition of "visible emissions" and did not object. Even if the court's previous ruling constituted "the law of the case," a court may disregard its previous decision when it is left with "a clear conviction of error." *Moses v. Business Card Express, Inc.,* 929 F.2d 1131, 1137 (6th Cir.), *cert. denied,* 502 U.S. 821, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991). The district court clearly explained that it had changed its ruling in regard to what constituted a visible emission because it was convinced of the clear error of its previous ruling, which had required the observation of asbestos particles. Midwest did not object at the time of the district court's bench ruling, did not ask for a continuance, and did not object in its post-trial brief. Moreover, Midwest did not offer any evidence or put on a case in spite of its awareness that the plumes of dust coming from material containing asbestos, which it conceded had been emitted, were considered

visible emissions by the district court. Midwest was given several opportunities prior to the court's final judgment of June 16, 1993, to alert the court to its "trial strategy" or to ask for a continuance, but chose not to do so. It was therefore not an abuse of discretion for the trial court to deny Midwest's motion for a new trial and the court is affirmed on this issue.

## VII.

To conclude, the opinion of the district court is hereby AFFIRMED.