NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0432n.06

Case No. 21-1828

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Oct 24, 2022
DEBORAH S. HUNT, Clerk

BRIAN ALEXANDER,

    Plaintiff - Appellant,

v.

ANNIE HARRISON; STEVEN J.
KWASNIK,

    Defendants - Appellees.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

OPINION

Before: GIBBONS, GRIFFIN, and STRANCH, Circuit Judges.

GIBBONS, Circuit Judge.

A state-court jury in Ingham County, Michigan, found Brian Alexander guilty of criminal

sexual conduct involving his fourteen-year-old stepdaughter, M.B. Subsequently the state court

ordered a new trial because the prosecution failed to disclose evidence suggesting factual

inaccuracies in M.B.'s account of one of the four alleged incidents. Instead of proceeding with a

second trial, the prosecutor, Steven Kwasnik, voluntarily dismissed the case. Alexander then sued

Kwasnik and Annie Harrison, a detective who investigated the allegations against Alexander, for

conspiracy to interfere with his civil rights under 42 U.S.C. § 1985 and for *Brady* violations and

malicious prosecution under § 1983. Before discovery, and pursuant to a briefing schedule that

imposed page limitations shorter than the default provided in the Local Rules, Kwasnik moved to

dismiss Alexander's claims against him on prosecutorial immunity grounds, and Harrison moved

for summary judgment. After briefing on both motions was complete, Alexander moved for leave

to file a Second Amended Complaint.  The district court denied leave to amend and granted in full defendants' motions, thereby dismissing Alexander's case in its entirety.  Because the district court properly granted both motions, and because it did not abuse its discretion in imposing page limits, denying discovery, or denying leave to amend, we affirm the district court.

**I.**

Harrison, a detective for the Ingham County Sheriff's Office, investigated a complaint received from a school guidance counselor regarding possible criminal sexual conduct by Alexander against his fourteen-year-old stepdaughter, M.B.  M.B. alleged that on four occasions, Alexander rubbed his clothed genitals against her clothed genitals.  At the preliminary examination, M.B. testified that the fourth of these incidents occurred when she was home sick from school.  After a probable cause finding, a state court grand jury indicted Alexander on four counts of second-degree criminal sexual conduct.  *See* Mich. Comp. Laws § 750.520c(a)(b)(i).  During their pretrial investigation, Alexander's defense counsel obtained M.B.'s school attendance records, which showed that M.B. had not missed any school during the period when she alleged that the fourth incident occurred.  Alexander's counsel provided these records to the prosecution.

About a week before Alexander's scheduled trial, Kwasnik, the trial prosecutor, met with M.B.  M.B. explained the apparent discrepancy between her preliminary examination testimony and the attendance records by saying that she had been sick but had texted her mother, who had instructed her to remain at school.  M.B. offered a similar account at trial.  The jury found Alexander guilty on all four counts.

After trial, Alexander's defense counsel obtained cell phone records showing that M.B. never texted her mother from school about being sick.  Based on this evidence, the state trial court granted Alexander a new trial.  The Michigan Court of Appeals reversed the trial court,

determining that the trial court applied an improper standard and that the new evidence would not justify the grant of a new trial. *See People v. Alexander*, No. 332700, 2016 WL 5887900 (Mich. Ct. App. Oct. 6, 2016) (per curiam). But the Michigan Supreme Court partially reversed the Michigan Court of Appeals, holding that although the state trial court had not applied the correct legal standard in granting a new trial based on newly discovered evidence, remand was appropriate to allow that court to apply the appropriate standard in the first instance. 896 N.W.2d 421 (Mich. 2017). On remand, the trial court again determined that a new trial was warranted. Rather than pursue a second trial, the prosecution moved to dismiss the criminal case without prejudice.

Alexander sued Harrison and Kwasnik in the Western District of Michigan for malicious prosecution, denial of due process, and conspiracy to deny due process under 42 U.S.C. §§ 1983 and 1985. Pursuant to the district judge's individual standing orders, Kwasnik and Harrison requested a pre-motion conference to discuss dispositive motions they intended to file. Kwasnik planned to file a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) based on absolute prosecutorial immunity. Harrison asked to move for summary judgment. Regarding Alexander's due process claims, Harrison argued that she, a law enforcement officer, had no constitutional duty to disclose evidence of which the prosecution team was already aware. Harrison also argued that her lack of participation in the decision to prosecute Alexander and the existence of probable cause to support the charges against him were fatal to his malicious prosecution claim.

At the pre-motion conference, Alexander requested discovery (including the opportunity to depose M.B). The district judge denied that request because Alexander failed to identify how discovery would enable him to overcome Kwasnik and Harrison's legal arguments. It also entered an order limiting briefing on the motions to fifteen pages per initial brief, fifteen pages per

response, and seven pages per reply given the motions' "narrow" focus on legal questions in the absence of disputed material facts.

Kwasnik and Harrison filed their motions and a joint brief totaling fourteen pages. In support of Harrison's motion, Kwasnik and Harrison each filed a short affidavit stating that Harrison was not present at the meeting between M.B. and Kwasnik. Alexander filed a response exceeding thirty pages to Kwasnik's motion and a separate six-page response to Harrison's motion. In their joint reply to Alexander's responses, Kwasnik and Harrison objected to Alexander's failure to comply with the page limits. Alexander moved for relief from those limits, arguing that resolution of both motions under their strictures would violate the Federal Rules of Civil Procedure and the Seventh Amendment.

After Kwasnik and Harrison responded to Alexander's motion, Alexander moved for leave to amend, attaching a proposed Second Amended Complaint. In his motion to amend, Alexander stated that he sought to "modify the conspiracy count from a statutory count to a common law count of conspiracy. . . ." DE 48, Mot. for Leave to File Second Am. Compl., Page ID 497. But the proposed Second Amended Complaint itself contained no such modification. Instead, the Second Amended Complaint included various additions to the factual allegations of the First Amended Complaint, most notably a list of instances in which M.B. was not honest with her parents. The district court denied Alexander's motion challenging the page limits due to its untimeliness and for failure to provide cause. The district court also denied Alexander's motion for leave to file a Second Amended Complaint due to undue delay and futility. Accordingly, the district court gave Alexander a new deadline to file compliant responses to Kwasnik's and Harrison's motions.

After the parties fully briefed those motions, the district court held a motions hearing. The district court heard from the parties and granted both Kwasnik's motion to dismiss based on prosecutorial immunity and Harrison's motion for summary judgment. It then entered final judgment in favor of Kwasnik and Harrison. Alexander timely appealed.

**II.**

We review a district court's order granting a motion to dismiss de novo. *Lipman v. Budish*, 974 F.3d 726, 740 (6th Cir. 2020). A motion to dismiss is properly granted if the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Where the allegations of a complaint establish that a defendant has a meritorious affirmative defense, dismissal of claims against that defendant is warranted. *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016).

We also review a district court's order granting summary judgment de novo. *Equitable Life Assurance Soc'y of the U.S. v. Poe*, 143 F.3d 1013, 1015 (6th Cir. 1998). We affirm the district court if the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We "view the factual evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in that party's favor." *Burwell v. City of Lansing*, 7 F.4th 456, 462 (6th Cir. 2021) (quoting *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008)).

We review a district court's imposition of page limits on briefing for abuse of discretion. *See S.S. v. E. Ky. Univ.*, 532 F.3d 445, 452–53 (6th Cir. 2008). The same standard of review applies to a district court's decision on a motion seeking discovery. *Doe v. City of Memphis*, 928 F.3d 481, 486 (6th Cir. 2019).

When a district court denies leave to amend a complaint because the amended complaint would not withstand a motion to dismiss, we review that legal conclusion de novo. *Boulton v. Swanson*, 795 F.3d 526, 537 (6th Cir. 2015). Otherwise, we review denial of leave to amend for abuse of discretion. *Id.*

### III.

Alexander raises procedural and substantive arguments against the district court's orders culminating in the dismissal of his case against Kwasnik and Harrison. None of Alexander's contentions have merit. Kwasnik and Harrison were entitled to dismissal of all claims against them based on the undisputed facts in the record. Moreover, the district court did not abuse its discretion in imposing page limits, denying discovery, or denying leave to amend.

1. **The district court properly granted Kwasnik's motion to dismiss on grounds of absolute prosecutorial immunity.**

Prosecutors enjoy absolute immunity from claims under 42 U.S.C. §§ 1983 and 1985 arising out of their acts of "initiating a prosecution" and "presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Absolute immunity applies wherever the prosecutor's acts are "intimately associated with the judicial phase of the criminal process." *Burns v. Reed*, 500 U.S. 478, 493 (1991) (quoting *Imbler*, 424 U.S. at 430). A prosecutor acting "in his role as advocate for the State" receives absolute immunity, but when he "functions as an administrator rather than as an officer of the court he is entitled only to qualified immunity." *Watkins v. Healy*, 986 F.3d 648, 661 (6th Cir. 2021) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). Perhaps most relevant here, a prosecutor acts with absolute immunity when "interviewing witnesses as he prepares for trial." *Buckley*, 509 U.S. at 273; *see also Rogers v. O'Donnell*, 737 F.3d 1026, 1032 (6th Cir. 2013). The same holds where a prosecutor determines which material to turn over to the defense in advance of trial. *See Watkins*, 986 F.3d at 661. On the other hand, a

prosecutor may act as an "investigator[]," and thus only have a claim to qualified immunity, when advising police how to conduct an investigation before probable cause has been established. *See Buckley*, 509 U.S. at 273–74. Where absolute prosecutorial immunity applies, it is a defense against liability even for acts performed "maliciously or corruptly," *Dean v. Byerley*, 354 F.3d 540, 554 (6th Cir. 2004), in bad faith, *see Lomaz v. Hennosy*, 151 F.3d 493, 497 (6th Cir. 1998), or motivated by conflict of interest, bribery, or conspiracy, *see Eldridge v. Gibson*, 332 F.3d 1019, 1021 (6th Cir. 2003).

All claims against Kwasnik in Alexander's First Amended Complaint arise out of a meeting with M.B. approximately one week before trial. Because Kwasnik was meeting with a witness in preparation for her trial testimony, absolute prosecutorial immunity defeats any claim against him based on what transpired at that meeting. *See Buckley*, 509 U.S. at 272–73; *Rogers*, 737 F.3d at 1032. The same rule defeats any claim based on Kwasnik's alleged failure to disclose to the defense team either M.B.'s story or any evidence in his possession that might have contradicted it, both of which resulted from Kwasnik's meeting with M.B. *See Watkins*, 986 F.3d at 661.

Alexander resists this conclusion by arguing that Kwasnik does not enjoy absolute prosecutorial immunity because he acted as an investigator rather than as a legal advocate when he met with M.B. But he cites no authority that adopts such a restrictive view of the scope of a prosecutor's legal advocacy, particularly in relation to witness interviews. The closest he comes is a reference to *Buckley*'s holding that a prosecutor who fabricates evidence to obtain an indictment from a grand jury may act in an investigative capacity. *See Buckley*, 509 U.S. at 274. However, this holding depended entirely on the pre-indictment character of the prosecutors' alleged actions, for, as the Supreme Court explained, "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Id. Buckley*

itself acknowledged that "interviewing witnesses as [the prosecutor] prepares for trial" is advocacy. *Id.* at 273. Here, the meeting between Kwasnik and M.B., a witness, which occurred long after the initial probable-cause finding and shortly before trial, fell within the scope of absolute prosecutorial immunity. *See id.*; *see also Rogers*, 737 F.3d at 1032.[1]

### 2. The district court properly granted Harrison's motion for summary judgment as to Alexander's due process claims.

The Due Process Clause of the Fourteenth Amendment requires the prosecution to turn over material evidence favorable to a criminal defendant. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Law enforcement officers share in this duty insofar as they possess evidence unknown to the prosecution. *See Strickler v. Greene*, 527 U.S. 263, 280–81 (1999) (*Brady* "encompasses evidence known *only* to police investigators and not to the prosecutor[.]") (emphasis added and citation omitted). When an officer possesses such evidence, the officer's disclosure obligation is to the prosecution, not directly to the defendant. *See D'Ambrosio v. Marino*, 747 F.3d 378, 389 (6th Cir. 2014) ("*Brady* obliges a police officer to disclose material exculpatory evidence only to the prosecutor rather than directly to the defense."). Thus, where exculpatory evidence is already known to the prosecutor, a law enforcement officer bears no further disclosure duty with respect to that evidence. *See id.*

Here, Alexander fails to identify any evidence known to Harrison but unknown to the prosecution. Alexander himself alleges that Kwasnik was present at the meeting where M.B. discussed having texted her mother about being sick. Because Kwasnik already knew about

---

[1] Alexander also suggests in passing that the district court relied on the affidavits submitted by Kwasnik and Harrison in granting Kwasnik's motion to dismiss, necessitating its conversion into a motion for summary judgment. Alexander forfeited this argument by failing to develop it. *See, e.g.*, *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997). The argument fails anyway because only Harrison relied on either affidavit to support her motion for summary judgment, not Kwasnik in support of his motion to dismiss.

M.B.'s story, and because Alexander does not allege that Harrison knew about any other evidence of which Kwasnik was unaware, Alexander's *Brady* claim against Harrison fails as a matter of law. *See id*.

Alexander's primary argument against this conclusion is that there is a genuine dispute as to whether Harrison was present at the meeting with M.B. Even assuming that is true, whether Harrison owed a duty to disclose anything that happened at the meeting depends on *Kwasnik*'s presence at the meeting, not Harrison's. Because it is undisputed that Kwasnik was present at the meeting with M.B., and therefore knew about all the evidence at issue in this case, Harrison owed no further duty under *Brady*. *See id.*

**3. The district court properly granted Harrison summary judgment as to Alexander's malicious prosecution claim.**

The Sixth Circuit recognizes a constitutional claim for malicious prosecution under the Fourth Amendment pursuant to 42 U.S.C. § 1983. *See, e.g., Barnes v. Wright*, 449 F.3d 709, 715–16 (6th Cir. 2006). Such a claim has four elements: (1) the defendant "made, influenced, or participated in the decision to prosecute" the plaintiff; (2) probable cause did not support the prosecution; (3) the plaintiff suffered a "deprivation of liberty" because of the prosecution; and (4) the proceeding resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010). Plaintiff cannot establish the first and second of these elements—Harrison's role in the decision to prosecute Alexander was insufficient to support a malicious prosecution claim, and probable cause supported the charges against Alexander.

A. *Harrison did not make, influence, or participate in the decision to prosecute Alexander.*

"[A]n officer will not be deemed to have commenced a criminal proceeding against a person when the claim is predicated on the mere fact that the officer turned over to the prosecution the officer's *truthful* materials." *Id.* at 314 (emphasis in original). Rather, an officer's conduct

satisfies the first element of a malicious prosecution claim "only when his deliberate or reckless falsehoods result in arrest and prosecution without probable cause." *Newman v. Twp. of Hamburg*, 773 F.3d 769, 772 (6th Cir. 2014). It is not enough if an officer is mistaken or even negligent as to the veracity of a witness's testimony. *See Robertson v. Lucas*, 753 F.3d 606, 616–17 n.7 (6th Cir. 2014).

Measured against these standards, Harrison did not make, influence, or participate in the decision to prosecute Alexander. Harrison's affidavit lists the standard police activities that Harrison undertook, including interviewing witnesses and submitting a warrant request to the prosecutor's office. That office then independently decided to authorize the issuance of the warrant and to prosecute Alexander. Harrison also stated that the information she submitted to the prosecution was accurate to the best of her knowledge.

On appeal, Alexander fails to develop any argument that Harrison influenced or participated in the initial decision to prosecute him. Instead, Alexander focuses on Harrison's alleged presence at the meeting with M.B., which occurred long after Alexander's indictment and shortly before trial, arguing that Harrison failed to act on M.B.'s alleged lack of credibility as revealed at that meeting. Even assuming that the failure to end an ongoing criminal proceeding may satisfy the first element of malicious prosecution, it was Kwasnik, not Harrison, who had the power to dismiss the charges against Alexander, and Alexander points to no facts that would suggest that Harrison influenced Kwasnik to continue to trial instead. *See McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005).

B. *Probable cause supported the charges against Alexander.*

"Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge were sufficient to warrant a prudent [person] in believing that the arrestee had

committed or was committing an offense." *Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001) (citation and internal quotation marks omitted). "Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999). A state court probable cause determination is preclusive unless the probable cause finding resulted from false evidence proffered by an officer. *Peet v. City of Detroit*, 502 F.3d 557, 566 (6th Cir. 2007).

Here, M.B.'s testimony about Alexander's sexual contact with her provided probable cause to support the charges against Alexander. *See Ahlers*, 188 F.3d at 370 ("An eyewitness identification will constitute sufficient probable cause unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what [she] had seen, or was in some fashion mistaken regarding [her] recollection.") (internal quotation marks omitted). Any subsequently discovered inconsistencies between her account of the fourth incident and other available evidence did not defeat probable cause. *See Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015) ("[I]nasmuch as [the complainant] persisted in her accusations that [the plaintiff] twice assaulted her to the extent of testifying under oath at trial, the alleged inconsistencies cannot reasonably be deemed to compel the conclusion that probable cause had ceased to exist."). In any event, the probable cause finding at the preliminary examination is preclusive on this issue, because Alexander does not contend that an officer proffered false evidence (as opposed to M.B. testifying falsely). *See Peet*, 502 F.3d at 566.

Alexander suggests that the testimony of a minor is a problematic basis for probable cause. The cases he cites, which involved very young children rather than adolescents, decline to adopt any age threshold beneath which a witness's word is presumed insufficient for probable cause, and instead consider a child's age alongside other factors impacting the evidence's reliability. *See*

*United States v. Shaw*, 464 F.3d 615, 624 (6th Cir. 2006) ("uncorroborated hearsay statement" of a three-year-old child insufficient for probable cause); *Wesley v. Campbell*, 779 F.3d 421, 430 (6th Cir. 2015) (same for allegations of seven-year-old child with history of serious emotional and psychological disturbances). M.B.'s age of fourteen did not render her testimony incompetent to establish probable cause. Regardless, Alexander fails to address the preclusive effect of the probable cause finding in state court.

> **4. The district court neither abused its discretion nor violated the Seventh Amendment when it imposed page limits on the dispositive motion briefing.**

Under Federal Rule of Civil Procedure 83(a), a district court may adopt local rules by action of a majority of its judges. Western District of Michigan Local Rule 7.2(b) provides for default page limits of twenty-five pages for a brief in support of or opposition to a dispositive motion and ten pages for a reply brief. However, Western District of Michigan Local Rule 7.1(c) also permits a district judge "[i]n [her] discretion" to "shorten or enlarge any … page limit established by these rules, with or without prior notice or motion."

Here, the district court did not abuse its discretion in limiting Alexander to fifteen pages for his response brief. The legal issues raised in the dispositive motions were straightforward, Kwasnik and Harrison complied with the page limits without apparent difficulty, and Alexander did not seek relief until after filing his first round of noncompliant briefing. *See E. Ky. Univ.*, 532 F.3d at 451–52 (upholding page limits "based on [the district court's] knowledge of the case and considerations of fairness" where request for relief came at "the last minute" and opposing party complied with page limits). Alexander also fails to point to any factual or legal contention that the page limits prevented him from presenting to the district court, which considered and rejected the same arguments he makes on appeal. *See id.* at 452. For the same reasons, the district court's page limits did not violate Alexander's constitutional right to trial by jury. *See Fid. & Deposit Co.*

*v. United States*, 187 U.S. 315, 319–21 (1902) (proper grant of summary judgment does not violate Seventh Amendment).

**5. The district court neither abused its discretion nor violated Alexander's right to trial by jury when it denied discovery.**

A nonmovant who seeks to avoid summary judgment because he needs further discovery must file an affidavit pursuant to Federal Rule of Civil Procedure 56(d) stating what discovery he requires and how that discovery might enable his claims to survive summary judgment. *See Cardinal v. Metrish*, 564 F.3d 794, 797 (6th Cir. 2009). Where a nonmovant fails to file such an affidavit, a district court does not abuse its discretion in denying discovery. *See CareToLive v. Food and Drug Admin.*, 631 F.3d 336, 345 (6th Cir. 2011).

Alexander never submitted a discovery affidavit pursuant to Rule 56(d). The closest he came was a motion that was neither sworn nor notarized. Such a motion fails to satisfy Rule 56(d). *Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.*, 788 F.3d 218, 226 (6th Cir. 2015).

Alexander also fails to explain how discovery would have enabled him to avoid dismissal of any of his claims. As discussed above, the district court dismissed Alexander's claims against Kwasnik on a motion to dismiss, not a motion for summary judgment, so Alexander had no right to seek discovery with respect to Kwasnik's motion. *See* Fed. R. Civ. P. 12(b)(6), 56(d). As for Alexander's claims against Harrison, Alexander speculates that M.B. might have testified in a deposition that Harrison was present at the pre-trial meeting with Kwasnik.[2] As set forth above, even if Harrison was present at that meeting, she is still entitled to summary judgment on all of Alexander's claims. The district court did not abuse its discretion in denying discovery.

---

[2] Alexander also argues that discovery would have allowed him to create a genuine dispute as to favorable termination of the charges against him, the fourth element of malicious prosecution. On appeal, Kwasnik and Harrison have conceded this element.

**6. The district court properly denied Alexander leave to further amend his First Amended Complaint.**

The district court denied Alexander's motion to amend on grounds of both undue delay and futility of the proposed amendment. The district court did not abuse its discretion in determining that there was no justification for Alexander's delay in seeking leave to amend. *See United States v. Midwest Suspension and Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995) ("Although Rule 15(a) indicates that leave to amend shall be freely granted, a party must act with due diligence if it intends to take advantage of the Rule's liberality."). By Alexander's own admission, he sought leave to amend based on legal research he conducted while preparing his responses to Kwasnik and Harrison's dispositive motions. Alexander offers no explanation as to why he could not have conducted this research before Kwasnik and Harrison not only filed their own motions but also responded to his previous motion seeking relief from the page limits, especially where Alexander had been on notice of the grounds for Kwasnik and Harrison's motions for several months.

In any event, the new factual allegations in Alexander's proposed Second Amended Complaint would have done nothing to overcome the legal inadequacies of his claims against Kwasnik or Harrison. And while Alexander asserts that his reason for seeking leave to amend was to replace his constitutional conspiracy count with a common-law count, the proposed Second Amended Complaint itself does not reflect that change. Alexander also does not even argue that a common law conspiracy count could have overcome the relevant defects of his constitutional conspiracy count given the flaws in his underlying claims.

**IV.**

We affirm the district court.